1  GARCIA RAINEY BLANK & BOWERBANK LLP
        A Limited Liability Partnership
2  NORMA V. GARCIA, Cal. Bar No. 223512
   ngarciaguillen@garciarainey.com
3  JEFFREY M. BLANK, Cal. Bar No. 217522
   jblank@garciarainey.com
4  695 Town Center Drive, Suite 540
   Costa Mesa, CA 92626
5  Telephone:    (714) 382-7000
   Facsimile:    (714) 784-0031
6
   Attorneys for Plaintiff
7  RONALD A. CHRISTENSEN

8              UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

10

11

12 | In re TAYLOR RONALD WOODS,         | **Case No.**: 2:22-bk-13613-ER
   |                                    | **Adversary No**: 2:22-ap-_____-ER
13 |                Debtor.             |
   |                                    | Chapter 7

14 |_____| Judge:  Hon. Ernesto M. Robles
15 | RONALD A. CHRISTENSEN, an          |
   | individual                         | **ADVERSARY COMPLAINT FOR**
16 |                                    | **(1)    DETERMINATION OF NON-**
   |                Plaintiff,          | **DISCHARGEABILITY OF DEBT**
17 |                                    | **PURSUANT TO 11 U.S.C.**
   |                v.                  | **§ 523(a)(2)(A);**
18 | TAYLOR RONALD WOODS, an            | **(2)    DETERMINATION OF NON-**
   | individual,                        | **DISCHARGEABILITY OF DEBT**
19 |                                    | **PURSUANT TO 11 U.S.C.**
   |                Defendant.          | **§ 523(a)(2)(B);**
20 |                                    | **(3)    DETERMINATION OF NON-**
21 |                                    | **DISCHARGEABILITY OF DEBT**
   |                                    | **PURSUANT TO 11 U.S.C. § 523(a)(4);**
22 |                                    | **(4)    DETERMINATION OF NON-**
23 |                                    | **DISCHARGEABILITY OF DEBT**
   |                                    | **PURSUANT TO 11 U.S.C. § 523(a)(6);**
24 |                                    | **(5)    DETERMINATION OF NON-**
25 |                                    | **DISCHARGEABILITY OF DEBT**
   |                                    | **PURSUANT TO 11 U.S.C.**
26 |                                    | **§ 523(a)(19)**
27 |                                    | **DEMAND FOR JURY TRIAL**
28 |                                    |

_____

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

Plaintiff Ronald A. Christensen complains and alleges as follows:

## PARTIES

1.      Plaintiff Ronald A. Christensen ("Plaintiff" or "Mr. Christensen") was and is, at all times mentioned herein, an individual residing in Scottsdale, Arizona.

2.      Plaintiff is informed and believes and, on that basis, alleges that defendant Taylor Ronald Woods ("Defendant" or "Woods"), at all relevant times, was a resident of Orange County, California until recently relocating to Meridian, Idaho.  At all relevant times, Woods owns and, along with Howard Wu ("Wu"), was and is a managing member of Urban Commons, LLC ("Urban Commons"), a privately held real estate investment trust (REIT) management company which is registered to do business in the State of California.  Urban Commons is the sole manager of Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), a Delaware Limited Liability Company.  Urban Commons is also the sole manager of Urban Commons Battery Park, LLC ("UC Battery Park"), a Delaware Limited Liability Company.

## JURISDICTION AND VENUE

3.      This is an adversary proceeding to determine the dischargeability of debts commenced under 11 U.S.C. § 523 and Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core proceeding" pursuant to 28 U.S.C. § 157.

5.      Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1409, inasmuch as Defendant's bankruptcy case, out of which this matter arises and to which this matter is related, is pending in this District.  Moreover, Woods's conduct that is the subject of this Complaint occurred in the State of California.

6.      On June 30, 2022, an involuntary petition was filed against Woods under Chapter 7 of Title 11 of the United States Code.  The bankruptcy action is entitled In

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

re Taylor Ronald Woods, Case No. 2:22-bk-13613-ER (hereinafter referred to as the "Bankruptcy Case").

7.      This adversary proceeding relates to the Bankruptcy Case now pending in this Court.  Plaintiff holds general unsecured claims against Defendant pursuant to claims arising from a fraudulent offer to purchase securities, in violation of federal and California securities laws, as more fully set forth in the Complaint pending in the United States District Court, Central District of California under the caption and docket number of *Rosen v. Urban Commons, LLC et al.*, Case No. 8:20-cv-01973-JLS-DFM, filed on October 13, 2020 (hereinafter referred to as the "Civil Action"). A true and correct copy of the operative Third Amended Complaint in the Civil Action filed on October 19, 2022 (Docket No. 281) is filed herewith as **Exhibit 1** and incorporated herein by this reference.

## GENERAL ALLEGATIONS

### UC Seattle

8.      In or about January 2020, Defendant, by and through Urban Commons, issued a private offering to investors ("UC Seattle Offering"), seeking to raise Forty Million Dollars ($40,000,000) in membership interest in UC Seattle.  UC Seattle is the single purpose limited liability company through which Urban Commons, which is owned and co-managed by Defendant, was going to purchase the real property known as Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington ("Hilton Seattle").

9.      On or about January 15, 2020, Plaintiff participated in a telephone call about investing in UC Seattle that was run by Defendant and C. Brian Egnatz ("Egnatz") a member of Urban Common's board of directors.  During this phone call, Defendant and Egnatz represented to Plaintiff that, among other things, after UC Seattle acquired Hilton Seattle, the holding period would be about 3-4 months, at which point UC Seattle would sell the Hilton Seattle to Eagle Hospitality Trust ("EHT").  EHT is a hospitality-stapled group sponsored by Urban Commons, which

1    Defendant owns and co-manages, and is comprised of Eagle Hospitality Real Estate

2    ("EH-REIT") and Eagle Hospitality Business Trust ("EH-BT").    During the call,

3    Defendant and Egnatz further represented to Plaintiff that Plaintiff would receive a

4    thirty percent (30%) return on his investment.

5          10.    Based on these and other representations alleged throughout this

6    Complaint, including false representations that these were "great deals," and that

7    Plaintiff and other investors would be "great additions" to the "family," Plaintiff

8    participated in the UC Seattle Offering.

9          11.    A true and correct copy of the Urban Commons 6th Ave Seattle, LLC

10    Membership    Interest    Subscription    Agreement    ("UC    Seattle    Subscription

11    Agreement") executed by Plaintiff on January 17, 2020 is filed herewith as **Exhibit 2**

12    and incorporated herein by this reference.

13          12.    Plaintiff, in reliance on the misrepresentations detailed throughout this

14    Complaint, invested Two Hundred and Fifty Thousand Dollars ($250,000.00) in UC

15    Seattle.    Specifically, on January 17, 2020, Plaintiff executed the UC Seattle

16    Subscription Agreement and remitted his investment via wire transfer to Urban

17    Commons, which Defendant owns and co-manages.

18          13.    Through the UC Seattle Subscription Agreement, Urban Commons,

19    which is owned and co-managed by Defendant, made various representations,

20    including, but not limited to the following:

21            a.    UC Seattle would not use or apply the purchase price until it had

22    raised the necessary funds from the UC Seattle Offering;

23            b.    The funds raised from the UC Seattle Offering would be used to

24    acquire the Hilton Seattle;

25            c.    The purchase price for the Hilton Seattle would be deposited into

26    an interest-bearing secure bank account; and all interest earned on such

27    account would be used by UC Seattle to pay all costs and expenses (including

28    but not limited to, all legal, accounting, and management costs and expenses)

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

incurred in connection with the UC Seattle Offering and the formation of UC Seattle;

  d. If the subscription is terminated, the funds raised by UC Seattle would be returned to the investors plus interest after costs and expenses were paid;

  e. UC Seattle was obtaining acquisition loans in an approximate aggregate amount of Sixty Million Dollars ($60,000,000.00) in order to acquire and refurbish the Hilton Seattle;

  f. Urban Commons would be the sole manager of UC Seattle with exclusive authority and control over all UC Seattle decisions in entering into and managing real estate investments;

  g. Each investor's capital will be returned at the time of a capital event(s) and prior to any profits from such capital event(s) being distributed to the members.

(UC Seattle Subscription Agreement, Exh. 2, p. 1.)

  14. Defendant also represented that the UC Seattle Offering would be completed by March 2020.

  15. Plaintiff is informed and believes and, on that basis, alleges that during the marketing and solicitation of investments in the membership interest of UC Seattle, Defendant misrepresented to Plaintiff that as of the week of January 6, 2020, Urban Commons had already raised Twenty-Five Million Dollars ($25,000,000) from the UC Seattle Offering and that Defendant had personally invested Five to Ten Million Dollars ($5,000,000 - $10,000,000).

  16. Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which Defendant owns and co-manages, has not completed the UC Seattle Offering nor has Defendant raised the Forty Million Dollars ($40,000,000) from the offering of membership interests in UC Seattle.

17.     Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which Defendant owns and co-manages, has not obtained a financing commitment for the acquisition loans in an approximate aggregate amount of Sixty Million Dollars ($60,000,000.00) in order to acquire and refurbish the Hilton Seattle.

18.     Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which is owned and co-managed by Defendant, has not acquired or refurbished the Hilton Seattle.

19.     Plaintiff is informed and believes and, on that basis, alleges that instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in direct violation of the UC Seattle Subscription Agreement and their representations to Plaintiff.  Had Plaintiff known his investment would be deposited in a non-interest bearing, non-refundable escrow account, he would not have invested in UC Seattle.

20.     Plaintiff further alleges that the securities that Defendant, through Urban Commons, sold to Plaintiff were unregistered in violation of the Securities Act of 1933 and were not exempt from such registration or qualification under the Securities Act of 1933.  Therefore, the offer and sale of membership interests in UC Seattle by Defendant, through Urban Commons, which Defendant owns and co-manages, violated the Securities Act of 1933 and California securities law.

### **UC Battery Park**

21.     In or about February 2020, Defendant, by and through Urban Commons, issued a private offering to investors ("UC Battery Park Offering") seeking to raise Seventy Million Dollars ($70,000,000) in membership interest in UC Battery Park. UC Battery Park is the single purpose limited liability company through which Urban Commons, which is owned and co-managed by Defendant, was going to purchase the real property known as the Wagner Hotel (formerly known as the Ritz-Carlton

Battery Park), located in lower Manhattan at 2 West Street, New York, New York ("Wagner Hotel").

22.    On or about February 26, 2020, Plaintiff had a telephone call about investing in UC Battery Park with Tina Ellis ("Ellis"), who liaised on behalf of Plaintiff, and Egnatz, who is a member of the board of Urban Commons, which Defendant owns and co-manages.  During the call, Egnatz represented to Plaintiff that, among other things, investing in UC Battery Park would yield a seventy percent (70%) return on investment and that the sale of the Wagner Hotel to EHT would be completed by the fourth quarter of 2020.

23.    Based on these and other representations alleged throughout this Complaint, Plaintiff participated in the UC Battery Park Offering.

24.    A true and correct copy of the Urban Commons Battery Park, LLC Membership Interest Subscription Agreement ("UC Battery Park Subscription Agreement") executed by Plaintiff on February 27, 2020 is filed herewith as **Exhibit 3** and incorporated herein by this reference.

25.    Plaintiff, in reliance on the misrepresentations detailed throughout this Complaint, invested Two Hundred and Fifty Thousand Dollars ($250,000.00) in UC Battery Park. Specifically, on February 27, 2020, Plaintiff executed the UC Battery Park Subscription Agreement.  Thereafter, on or about March 3, 2020, Plaintiff remitted his investment via wire transfer to Urban Commons, which Defendant owns and co-manages.

26.    Through the UC Battery Park Subscription Agreement, Urban Commons, which is owned and co-managed by Defendant, made various representations, including, but not limited to the following:

a.    UC Battery Park anticipated completing the UC Battery Park Offering by March 6, 2020;

b.    UC Battery Park would not use or apply the purchase price until it had raised the necessary funds from the UC Battery Park Offering;

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

     c.      The funds raised from the UC Battery Park Offering would be used to acquire the Wagner Hotel;

     d.      The purchase price for the Wagner Hotel would be deposited into an interest-bearing secure bank account; and all interest earned on such account would be used by UC Battery Park to pay all costs and expenses (including but not limited to, all legal, accounting, and management costs and expenses) incurred in connection with the UC Battery Park Offering and the formation of UC Battery Park;

     e.      If the subscription is terminated, the funds raised by UC Battery Park would be returned to the investors plus interest after costs and expenses were paid;

     f.      UC Battery Park was obtaining acquisition loans in an approximate aggregate amount of One Hundred Million Dollars ($100,000,000.00) in order to acquire and refurbish the Wagner Hotel;

     g.      Urban Commons would be the sole manager of UC Battery Park with exclusive authority and control over all UC Battery Park decisions in entering into and managing real estate investments;

     h.      Each investor's capital will be returned at the time of a capital event(s) and prior to any profits from such capital event(s) being distributed to the members.

(UC Battery Park Subscription Agreement, Exh. 3, p. 1.)

27.     Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which Defendant owns and co-manages, has not completed the UC Battery Park Offering nor has Defendant raised the Seventy Million Dollars ($70,000,000) from the offering of membership interests in UC Battery Park.

28.     Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which Defendant owns and co-manages, has not obtained a financing commitment for the acquisition loans in an approximate aggregate amount

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

of One Hundred Million Dollars ($100,000,000.00) in order to acquire and refurbish the Wagner Hotel.

29.    Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which is owned and co-managed by Defendant, has not acquired or refurbished the Wagner Hotel.

30.    Plaintiff is informed and believes and, on that basis, alleges that instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Battery Park and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in direct violation of the UC Battery Park Subscription Agreement and their representations to Plaintiff.  Had Plaintiff known his investment would be deposited in a non-interest bearing, non-refundable escrow account, he would not have invested in UC Battery Park.

31.    Plaintiff further alleges that the securities that Defendant, through Urban Commons, sold to Plaintiff were unregistered in violation of the Securities Act of 1933 and were not exempt from such registration or qualification under the Securities Act of 1933.  Therefore, the offer and sale of membership interests in UC Battery Park by Defendant, through Urban Commons, which Defendant owns and co-manages, violated the Securities Act of 1933 and California securities law.

**Defendant's Failure to Disclose Interest in EHT**

32.    Plaintiff is informed and believes and, on that basis, alleges that in or about May 2019, Urban Commons went public on the Singapore Stock Exchange as EAGLEHT SP.

33.    Plaintiff is informed and believes and therefore alleges that Defendant and Wu, the co-managers of Urban Commons, own and/or owned seventeen percent (17%) of the equity in EHT and were and/or are Chairman and Deputy Chairman, respectively, of the EHT board.  Plaintiff is also informed and believes and, on that basis, alleges that Defendant holds and/or held shares of EAGLEHT SP as a result of his relationship, involvement, and/or ownership interest in EHT.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

34.    During the marketing and solicitation of investments in the membership interest of UC Seattle and UC Battery Park, Defendant, directly and/or through Urban Commons and/or its representatives, misrepresented that Urban Commons would invest ten to twenty-five percent (10-25%) of the equity in the purchase of the Hilton Seattle and the Wagner Hotel.  Plaintiff is informed and believes and, on that basis, alleges that at the time these misrepresentations were made, Defendant knew these misrepresentations were false and made them in order to induce Plaintiff into investing in UC Seattle and UC Battery Park.

35.    During the marketing and solicitation of investments in the membership interest of UC Seattle and UC Battery Park, Defendant, directly and/or through Urban Commons and/or its representatives, did not disclose his relationship with, involvement in, and/or ownership interest in EHT, which is the Singaporean REIT which was supposed to (i) buy UC Seattle upon UC Seattle's acquisition of the Hilton Seattle, and (ii) buy UC Battery Park upon UC Battery Park's acquisition of the Wagner Hotel.  Plaintiff is informed and believes and, on that basis, alleges that at the time these misrepresentations were made, Defendant knew these misrepresentations were false and made them in order to induce Plaintiff into investing in UC Seattle and UC Battery Park.

36.    During the marketing and solicitation of investments in the membership interest of UC Seattle and UC Battery Park, Defendant, directly and/or through Urban Commons and/or its representatives, misrepresented that the membership interest in UC Seattle would be sold to EHT by early summer of 2020 and the membership interest in UC Battery Park would be sold to EHT by the fourth quarter of 2020. Plaintiff is informed and believes and, on that basis, alleges that at the time these misrepresentations were made, Defendant knew these misrepresentations were false and made them in order to induce Plaintiff into investing in UC Seattle and UC Battery Park.

37.    During the marketing and solicitation of investments in the membership interest in UC Battery Park, Defendant, directly and/or through Urban Commons and/or its representatives, misrepresented that investment in UC Battery Park would yield a significant return on investment as a result of the purported $500,000 per door purchase price for the Wagner Hotel.  Plaintiff is informed and believes and, on that basis, alleges that at the time these misrepresentations were made, Defendant knew these misrepresentations were false and made them in order to induce Plaintiff into investing in UC Battery Park.

38.    Plaintiff is informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interest in UC Seattle and UC Battery Park to Plaintiff (between January and March 2020), Defendant knew that EHT was not performing well and failed to disclose this material fact to Plaintiff.  Specifically, as Defendant both directly and indirectly made written and verbal material misrepresentations to Plaintiff between January 2020 and March 2020, Defendant knew that that EH-REIT had defaulted on a Three Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan and that trading of EAGLEHT SP units was suspended.  Plaintiff is informed and believes that the default was caused by the failure of Urban Commons, the master lessee of EHT's properties, to place with EHT the full sum of security deposits under the master lease agreements and make timely rental payments.  Importantly, this default occurred in or about December 2019.

39.    Plaintiff is informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interests in UC Seattle and UC Battery Park to Plaintiff (between January and March 2020), Defendant knew that EHT was not performing well, knew EH-REIT had defaulted on its US$341,000,000.00 facility loan, and knew trading of EAGLEHT SP units was suspended.  Despite knowing this, Defendant, directly and/or through Urban Commons and/or its representatives, still represented to Plaintiff that by

investing in UC Seattle and UC Battery Park, Plaintiff would have no exposure to Singapore market fluctuations or risk.

40.    Plaintiff is further informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interests in UC Seattle and UC Battery Park, Defendant knew he and his associates were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP.

41.    Plaintiff is informed and believes and, on that basis, alleges that as a result of the loan default, trading of EAGLEHT SP units was voluntarily suspended on or about March 24, 2020, only twenty-one (21) days after Defendant, through Urban Commons, received Plaintiff's $250,000 investment in UC Battery Park.

42.    During the marketing and solicitation of investments in the membership interests of UC Seattle and UC Battery Park, Defendant, directly and/or through Urban Commons and/or its representatives, failed to disclose that Urban Commons, which Defendant owns and co-manages, had failed to make timely rental payments since 2019 and failed to disclose this default by Urban Commons.

43.    Nowhere in the UC Seattle Subscription Agreement or UC Battery Park Subscription Agreement, or otherwise did Defendant, either directly or through Urban Commons and/or its representatives, disclose his involvement with, connection to, and/or relationship with EHT.

44.    Nowhere in the UC Seattle Subscription Agreement or the UC Battery Park Subscription Agreement, or otherwise did Defendant, either directly or through Urban Commons and/or its representatives, disclose (i) EHT's financial trouble, or (ii) that EH-REIT defaulted on its Three Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan in or about December 2019.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

45.     Nowhere in the UC Seattle Subscription Agreement or the UC Battery Park Subscription Agreement, or otherwise did Defendant, either directly or through Urban Commons and/or its representatives, disclose anything about (i) EAGLEHT SP's troubles with the Monetary Authority of Singapore (MAS) and the Singapore Stock Exchange, or (ii) the suspension of EAGLEHT SP's shares on the Singapore Stock Exchange.

46.     Indeed, none of the disclosures identified above were made to Plaintiff prior to soliciting and accepting his investments in UC Seattle and UC Battery Park, even though Defendant had an obligation to do so.

47.     Defendant, both directly and through Urban Commons and its representatives, made misrepresentations of material facts and omitted material facts concerning the UC Seattle Offering and the UC Battery Park Offering.  Plaintiff relied on such misrepresentations and/or omissions in deciding to invest in UC Seattle and UC Battery Park.  But for such misrepresentations and/or material omissions, Plaintiff would not have invested $250,000 in UC Seattle and $250,000 in UC Battery Park.

48.     In sum, in the pitch to solicit the purchase of membership interests in UC Seattle and UC Battery Park by Plaintiff, Defendant, both directly and through Urban Commons, and by means of written and/or oral communications, made untrue statements of material facts and omitted to state material facts necessary to make the statements made, considering the circumstances under which the statements were made, not misleading, including, inter alia:

a. Materially misrepresented and omitted material facts concerning Defendant's credentials, experience, and capabilities in order to induce the trust and confidence of Plaintiff and other investors and lenders;

b. Failed to disclose the default by Urban Commons on the Master Lease Agreements with EHT that occurred prior to both the UC Seattle Offering and the UC Battery Park Offering, and EH-REIT's subsequent

default and acceleration of its Three Hundred and Forty-One Million Dollar (US$341,000,000.00) loan;

c. Failed to disclose and omitted material facts concerning Urban Commons, Defendant, and Wu in the offering of the membership interests in UC Seattle and UC Battery Park;

d. Materially misrepresented and omitted material facts concerning the completion dates for the offerings and the dates on which the Hilton Seattle and Wagner Hotel would be sold to EHT;

e. Materially misrepresented and omitted material facts concerning raising the necessary funds from the UC Seattle Offering to purchase the Hilton Seattle and from the UC Battery Park Offering to purchase the Wagner Hotel;

f. Materially misrepresented the value of the return on investment, claiming the net return for investors such as Plaintiff would be "significant" and "repeatable;" and

g. Materially misrepresented and omitted material facts concerning the status of the investments, acquisition of the Hilton Seattle and Wagner Hotel, and escrow account(s) allegedly holding Plaintiff's investments.

**Plaintiff Rescinds Membership Interest After Defendant Woods Fails to Provide Any Information Regarding the Acquisition of Hilton Seattle and Wagner Hotel**

49.     On April 28, 2020, Ellis, who liaised on behalf of Plaintiff, requested from Defendant via email an update regarding Plaintiff's investments in UC Seattle and UC Battery Park.

50.     Plaintiff is informed and believes and, on that basis, alleges that Defendant directed Egnatz to respond to Ellis, so that Defendant would not have to respond directly and be accountable to Plaintiff.  Accordingly, in response to Ellis's email, Egnatz directed Ellis not to contact Defendant directly in the future but rather

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

1  contact Egnatz or his associate, who would then determine who should be contacted

2  at Urban Commons.

3      51.    On May 17, 2020, Plaintiff provided Urban Commons, UC Seattle, UC

4  Battery Park, Defendant, and Wu with written correspondence wherein Plaintiff

5  provided such parties with notice of Plaintiff's rescission on his subscriptions for

6  membership interests in UC Seattle and UC Battery Park.    In said written

7  correspondence, Plaintiff demanded remittance of his collective $500,000 in

8  investments.  Much to Plaintiff's dismay, Defendant, through Urban Commons, has

9  failed to reimburse Plaintiff's investments.

10      52.    A true and correct copy of the Notice of Rescission is filed herewith as

11  **Exhibit 4** and incorporated herein by this reference.

12      53.    Importantly, before noticing rescission, Plaintiff requested from

13  Defendant, through Urban Commons, proof that either: (i) the UC Seattle Offering

14  and UC Battery Park Offering had been completed and the Hilton Seattle and the

15  Wagner Hotel had been acquired, or (ii) that Plaintiff's investments were being held

16  in a segregated interest-bearing escrow account.  Defendant, either directly or

17  through Urban Commons and/or its representatives, has failed to honor Plaintiff's

18  request, providing no proof whatsoever.

19      54.    Plaintiff is informed and believes and, on that basis, alleges that to date,

20  UC Seattle has not acquired the Hilton Seattle.  Accordingly, Plaintiff is unaware of

21  where his investment funds went or how they were used by Defendant, Wu, Urban

22  Commons, UC Seattle, and/or UC Battery Park or even if they were used for their

23  intended purpose, *i.e.*, acquiring the Hilton Seattle and the Wagner Hotel.

24      55.    Through discovery in the Civil Action, Plaintiff has now learned that

25  Urban Commons already owned the Wagner hotel at the time it was offering

26  subscriptions for membership in interest in UC Battery Park.  Plaintiff is informed

27  and believes and, on that basis, alleges that Defendant, directly and/or through Urban

28  Commons and/or its representatives, misrepresented that the UC Battery Park

Offering was for the acquisition of the Wagner Hotel in order to make subscriptions for membership interest in UC Battery Park more attractive to unknowing investors. Plaintiff is informed and believes and, on that basis, alleges that the UC Battery Park Offering was never for the purchase of the Wagner Hotel and thus Plaintiff's investment funds were never used for their intended purpose, *i.e.*, the acquisition of the Wagner Hotel.  Accordingly, Plaintiff is unaware of where his investment funds went or how they were used by Defendant, Wu, Urban Commons, and/or UC Battery Park.

56.    To date, Defendant, either directly or through Urban Commons and/or its representatives, has either failed or refused to provide any accounting of Plaintiff's investments, where Plaintiff's investments went, or how Plaintiff's investments were used by Defendant, Wu, Urban Commons, UC Seattle, and/or UC Battery Park. Plaintiff fears that Defendant has absconded with his collective $500,000 investment.

57.    The UC Seattle Subscription Agreement expressly provides that should the offering be terminated, the investment would be returned to Plaintiff with interest. Defendant, either directly and/or through Urban Commons and/or UC Seattle, has refused to do so, (i) even though UC Seattle failed to timely complete the UC Seattle Offering and/or acquire the Hilton Seattle, and (ii) even though Plaintiff provided a Notice of Rescission and repeatedly requested that his investment funds be returned.

58.    The UC Battery Park Subscription Agreement expressly provides that should the offering be terminated, the investment would be returned to Plaintiff with interest.   Defendant, either directly and/or through Urban Commons and/or UC Battery Park, has refused to do so, (i) even though UC Battery Park failed to timely complete the UC Battery Park Offering and/or acquire the Wagner Hotel, and (ii) even though Plaintiff provided a Notice of Rescission and repeatedly requested that his investment funds be returned.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

### Defendant Woods is an Alter Ego of UC Seattle

59.    Plaintiff is informed and believes and, on that basis, alleges that Defendant has so blatantly disregarded the corporate formalities between himself and UC Seattle that allowing him to seek protection from his fraudulent conduct by hiding behind UC Seattle would result in an injustice against this Court and Plaintiff.

60.    Plaintiff is informed and believes and, on that basis, alleges that Defendant disregarded corporate formalities by, among other things:

   a. Transferring at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) from UC Seattle to Urban Commons, which Defendant owns and co-manages, in 2020, despite a specific prohibition against such transfers contained in the UC Seattle Subscription Agreement, as alleged in Paragraph 13, above;

   b. Transferring at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Seattle's failure to acquire the Hilton Seattle as alleged in Paragraph 18 above;

   c. Treating UC Seattle assets and funds as his own;

   d. Taking funds from UC Seattle and transferring them to other Urban Commons-controlled entities under his ownership and control, in addition to his own personal use.

61.    For example, after Plaintiff made his Two Hundred and Fifty Thousand Dollar ($250,000) investment in UC Seattle on January 17, 2020, Plaintiff is informed and believes and, on that basis, alleges that on that same day, Defendant transferred $250,000 from UC Seattle's bank account to the bank account for Urban Commons.  Plaintiff is informed and believes and, on that basis, alleges that on January 28, 2020, Defendant subsequently transferred $250,000 from the bank account for Urban Commons to a bank account controlled by him.

62.    Plaintiff is informed and believes and, on that basis, alleges that Defendant is one of two member-managers of Urban Commons, the limited liability entity that was contractually appointed as the manager of the Property by the UC Seattle Subscription Agreement.  Plaintiff is further informed and believes and, on that basis, alleges that Defendant used his position as owner and member manager of Urban Commons in order to fraudulently transfer funds between UC Seattle, Urban Commons, and his personal accounts, as alleged above.

**Defendant Woods is an Alter Ego of UC Battery Park**

63.    Plaintiff is informed and believes and, on that basis, alleges that Defendant has so blatantly disregarded the corporate formalities between himself and UC Battery Park that allowing him to seek protection from his fraudulent conduct by hiding behind UC Battery Park would result in an injustice against this Court and Plaintiff.

64.    Plaintiff is informed and believes and, on that basis, alleges that Defendant disregarded corporate formalities by, among other things:

    a. Transferring at least Fifteen Million, Forty-Eight Thousand Dollars ($15,048,000) from UC Battery Park to Urban Commons, which Defendant owns and co-manages, in 2020, despite a specific prohibition against such transfers contained in the UC Battery Park Subscription Agreement, as alleged in Paragraph 26, above;

    b. Transferring at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Battery Park's failure to acquire the Wagner Hotel as alleged in Paragraph 29 above;

    c. Treating UC Battery Park assets and funds as his own;

d.  Taking funds from UC Battery Park and transferring them to other Urban Commons-controlled entities under his ownership and control, in addition to his own personal use.

65.    For example, Plaintiff is informed and believes and, on that basis, alleges that on May 12, 2020, Defendant made two transfers from UC Battery Park's bank account to the bank account for Urban Commons—one for One Million Dollars ($1,000,000) and the second for Five Hundred Thousand Dollars ($500,000). Plaintiff is further informed and believes and, on that basis, alleges that on the same day, May 12, 2020, Defendant subsequently made two transfers from the bank account for Urban Commons to a bank account personally controlled by him—one for One Million Dollars ($1,000,000) and the second for Five Hundred Thousand Dollars ($500,000).  These transfers to Defendant occurred just five (5) days before Plaintiff provided Notice of Rescission on May 17, 2020.

66.    Plaintiff is informed and believes and, on that basis, alleges that Defendant is one of two member-managers of Urban Commons, the limited liability entity that was contractually appointed as the manager of the Property by the UC Battery Park Subscription Agreement.  Plaintiff is further informed and believes and, on that basis, alleges that Defendant used his position as owner and member manager of Urban Commons in order to fraudulently transfer funds between UC Battery Park, Urban Commons, and his personal accounts, as alleged above.

## **Defendant Woods Has a Pattern of Fraud and Dissipating Assets**

67.    Importantly, Woods has already been declared a "fraudster" by United States Bankruptcy Court Judge Christopher S. Sontchi from the District of Delaware in *In re EHT US1, Inc.*, 633 B.R. 223 (Bankr. D. Del., Nov. 15, 2021).

68.    In his opinion, Judge Sontchi stated:

"Messrs. Woods and Wu are fraudsters.  They fraudulently obtained a PPP loan on behalf of the Debtor without authority and absconded with the proceeds, leaving either the Debtor or the United States to pay back the lender.

1  They were sued by the Debtor, and, after notice and a hearing, the Court
2  entered summary judgment against them and their company and enjoined
3  Defendants from dissipating their assets.  In addition, the Court ordered a
4  detailed accounting.  Defendants have not provided a sufficient accounting and
5  have baldly stated they intend to dissipate their assets."

6  *In re EHT US1, Inc.*, 633 B.R. at 225.

7

8  **FIRST CLAIM FOR RELIEF**

9  **(Determination of Non-Dischargeability of Debt**

10  **Pursuant to 11 U.S.C. §523(a)(2)(A))**

11  69.    Plaintiff hereby incorporates by reference each allegation contained in
12  paragraphs 1 through 68 and realleges those allegations as if fully set forth herein.

13  70.    Defendant incurred obligations to Plaintiff by false pretenses, false
14  representations, and/or actual fraud by misrepresenting essential material facts.

15  71.    In the UC Seattle Subscription Agreement, Defendant, through Urban
16  Commons, the Manager of UC Seattle, promised, among other things, that (i) UC
17  Seattle would not use or apply the purchase price for the Hilton Seattle until the
18  necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised
19  for the UC Seattle Offering would be used to invest in UC Seattle, which would
20  acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price
21  for the Hilton Seattle would be deposited into interest-bearing secure bank accounts;
22  (iv) if the UC Seattle Subscription Agreement was terminated, all funds raised would
23  be returned to the investors, together with any interest remaining on such funds
24  following the payment of all costs and expenses; and (v) UC Seattle would obtain a
25  loan in an approximate aggregate amount of Sixty Million Dollars ($60,000,000) to
26  acquire the Hilton Seattle.

27  72.    In the UC Battery Park Subscription Agreement, Defendant, through
28  Urban Commons, the Manager of UC Battery Park, promised, among other things,

1    that (i) UC Battery Park anticipated completing the UC Battery Park Offering by

2    March 6, 2020; (ii) UC Battery Park would not use or apply the purchase price for the

3    Wagner Hotel until the necessary funds from the UC Battery Park Offering had been

4    raised; (iii) the funds raised for the UC Battery Park Offering would be used to invest

5    in UC Battery Park, which would acquire, own, operate, and eventually sell the

6    Wagner Hotel; (iv) the purchase price for the Wagner Hotel would be deposited into

7    interest-bearing secure bank accounts; (v) if the UC Battery Park Subscription

8    Agreement was terminated, all funds raised would be returned to the investors,

9    together with any interest remaining on such funds following the payment of all costs

10    and expenses; and (vi) UC Battery Park would obtain a loan in an approximate

11    aggregate amount of One Hundred Million Dollars ($100,000,000) to acquire the

12    Wagner Hotel.

13        73.    Defendant and/or Egnatz, who was acting as an exclusive agent for

14    Urban Commons, which Defendant owns and co-manages, represented to Plaintiff,

15    among other things, that (i) the UC Seattle Offering would be completed by March

16    2020, (ii) the Hilton Seattle would be sold to EHT within 3-4 months after UC Seattle

17    acquired the Hilton Seattle, and (iii) Plaintiff would receive a 30% return on his

18    investment.

19        74.    Defendant, through Egnatz, represented to Plaintiff, among other things,

20    that (i) Plaintiff's investment in UC Battery Park would yield a 70% return on

21    investment, and (ii) the sale of the Wagner Hotel to EHT would be completed by the

22    fourth quarter of 2020.

23        75.    With regard to the UC Seattle Offering, at the time Defendant made

24    these representations, Defendant knew that such representations were false, because

25    Defendant was well aware that: (i) instead of keeping Plaintiff's investment in a

26    secure, interest-bearing refundable escrow account, UC Seattle and Defendant

27    opened and deposited Plaintiff's investment into a non-refundable escrow account in

28    violation of the UC Seattle Subscription Agreement and their representations to

-20-

Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the UC Seattle Subscription Agreement; (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the UC Seattle Subscription Agreement; and (iv) Defendant had no intention of returning Plaintiff's $250,000 investment in UC Seattle in the event the UC Seattle Subscription Agreement was terminated, and to date, even after receiving Plaintiff's Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment in UC Seattle.

76.    With regard to the UC Battery Park Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) Urban Commons already owned the Wagner Hotel at the time it was soliciting subscriptions for membership interest in UC Battery Park; (ii) Defendant never planned to use Plaintiff's investment in UC Battery Park for the acquisition of the Wagner Hotel; (iii) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Battery Park and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the UC Battery Park Subscription Agreement and their representations to Plaintiff; (iv) Defendant planned to transfer, and in fact did transfer, at least Fifteen Million Forty-Eight Thousand Dollars ($15,048,000) in funds raised for the UC Battery Park Offering from UC Battery Park to Urban Commons, which Defendant owns and co-manages, in violation of the UC Battery Park Subscription Agreement; and (v) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Battery Park's failure to acquire the Wagner Hotel pursuant to the UC Battery Park Subscription Agreement; and (vi) Defendant had no intention of returning Plaintiff's $250,000 investment in UC Battery Park in the event the UC Battery Park Subscription Agreement was terminated, and to date, even after receiving Plaintiff's Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment in UC Battery Park.

77.    With regard to both the UC Seattle Offering and the UC Battery Park Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) as of at least 2019, EHT, the entity in which Defendant has ownership interest that was supposed to purchase the Hilton Seattle from UC Seattle and the Wagner Hotel from UC Battery Park, was not performing well; (ii) EH-REIT had defaulted on a Three Hundred and Forty-One Million Dollar (US$341,000,000) facility loan; (iii) EH-REIT's facility loan default dated back to at least December 2019; (iv) since at least 2019, Urban Commons had failed to make timely payments to EHT as master lessee of EHT's properties; (v) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; and (vi) trading of EAGLEHT SP's units had been suspended.

78.    Defendant, either directly or indirectly through Urban Commons, UC Seattle, UC Battery Park, and/or their representatives, made such misrepresentations and omissions to induce Plaintiff into investing in UC Seattle and UC Battery Park.

79.    In reliance on such misrepresentations and omissions, Plaintiff invested $250,000 in UC Seattle and $250,000 in UC Battery Park.

80.     Plaintiff was harmed by Defendant's concealment of such material facts. Had such material facts been disclosed, Plaintiff would have taken steps, including not investing in UC Seattle pursuant to the UC Seattle Offering and not investing in UC Battery Park pursuant to the UC Battery Park Offering.

81.     The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

82.     Based on the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(A), as the debts owed to Plaintiff were obtained by false pretense, false representation, and/or actual fraud.

## SECOND CLAIM FOR RELIEF

### (Determination of Non-Dischargeability of Debt

### Pursuant to 11 U.S.C. §523(a)(2)(B))

83.     Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 82 and realleges those allegations as if fully set forth herein.

84.     Defendant incurred obligations to Plaintiff by making materially false statements in the UC Seattle Subscription Agreement and the UC Battery Park Subscription Agreement related to the financial condition of Defendant and/or insiders of Defendant, including Wu, Urban Commons, UC Seattle, and/or UC Battery Park.

85.     In the UC Seattle Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that (i) UC Seattle would not use or apply the purchase price for the Hilton Seattle until the necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised for the UC Seattle Offering would be used to invest in UC Seattle, which would acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price

for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the UC Seattle Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (v) UC Seattle would obtain a loan in an approximate aggregate amount of Sixty Million Dollars ($60,000,000) to acquire the Hilton Seattle.

86.    In the UC Battery Park Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Battery Park, promised, among other things, that (i) UC Battery Park anticipated completing the UC Battery Park Offering by March 6, 2020; (ii) UC Battery Park would not use or apply the purchase price for the Wagner Hotel until the necessary funds from the UC Battery Park Offering had been raised; (iii) the funds raised for the UC Battery Park Offering would be used to invest in UC Battery Park, which would acquire, own, operate, and eventually sell the Wagner Hotel; (iv) the purchase price for the Wagner Hotel would be deposited into interest-bearing secure bank accounts; (v) if the UC Battery Park Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (vi) UC Battery Park would obtain a loan in an approximate aggregate amount of One Hundred Million Dollars ($100,000,000) to acquire the Wagner Hotel.

87.    With regard to the UC Seattle Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the UC Seattle Subscription Agreement and their representations to Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST TAYLOR RONALD WOODS

raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the UC Seattle Subscription Agreement; (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the UC Seattle Subscription Agreement; and (iv) Defendant had no intention of returning Plaintiff's $250,000 investment in UC Seattle in the event the UC Seattle Subscription Agreement was terminated, and to date, even after receiving Plaintiff's Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment in UC Seattle.

88.    With regard to the UC Battery Park Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) Urban Commons already owned the Wagner Hotel at the time it was soliciting subscriptions for membership interest in UC Battery Park; (ii) Defendant never planned to use Plaintiff's investment in UC Battery Park for the acquisition of the Wagner Hotel; (iii) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Battery Park and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the UC Battery Park Subscription Agreement and their representations to Plaintiff; (iv) Defendant planned to transfer, and in fact did transfer, at least Fifteen Million Forty-Eight Thousand Dollars ($15,048,000) in funds raised for the UC Battery Park Offering from UC Battery Park to Urban Commons, which Defendant owns and co-manages, in violation of the UC Battery Park Subscription Agreement; (v) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Battery

Park's failure to acquire the Wagner Hotel pursuant to the UC Battery Park Subscription Agreement; and (vi) Defendant had no intention of returning Plaintiff's $250,000 investment in UC Battery Park in the event the UC Battery Park Subscription Agreement was terminated, and to date, even after receiving Plaintiff's Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment in UC Battery Park.

89.     With regard to both the UC Seattle Offering and the UC Battery Park Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) as of at least 2019, EHT, the entity in which Defendant has ownership interest that was supposed to purchase the Hilton Seattle from UC Seattle and the Wagner Hotel from UC Battery Park, was not performing well; (ii) EH-REIT had defaulted on a Three Hundred and Forty-One Million Dollar (US$341,000,000) facility loan; (iii) EH-REIT's facility loan default dated back to at least December 2019; (iv) since at least 2019, Urban Commons had failed to make timely payments to EHT as master lessee of EHT's properties; (v) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; and (vi) trading of EAGLEHT SP's units had been suspended.

90.     Defendant, either directly or indirectly through Urban Commons, UC Seattle, UC Battery Park, and/or their representatives, caused to be made or published such misrepresentations and omissions to intent to deceive Plaintiff and induce Plaintiff into investing in UC Seattle and UC Battery Park.

91.     In reasonable reliance on such misrepresentations and omissions, Plaintiff invested $250,000 in UC Seattle and $250,000 in UC Battery Park.

92.     Plaintiff was harmed by Defendant's concealment of such material facts. Had such material facts been disclosed, Plaintiff would have taken steps, including

1  not investing in UC Seattle pursuant to the UC Seattle Offering and not investing in

2  UC Battery Park pursuant to the UC Battery Park Offering.

3  93.    The intentionally fraudulent acts of Defendant were undertaken in a

4  malicious manner justifying an award of punitive damages against Defendant and in

5  favor of Plaintiff.

6  94.    Based on the facts alleged herein, Plaintiff requests that Defendant's

7  obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11

8  U.S.C. § 523(a)(2)(B), as the debts owed to Plaintiff were obtained by the use of a

9  statement in writing that is materially false respecting the debtor's or an insider's

10  financial condition.

11

12  **THIRD CLAIM FOR RELIEF**

13  **(Determination of Non-Dischargeability of Debt**

14  **Pursuant to 11 U.S.C. § 523(a)(4))**

15  95.    Plaintiff hereby incorporates by reference each allegation contained in

16  paragraphs 1 through 94 and realleges those allegations as if fully set forth herein.

17  96.    Pursuant to the UC Seattle Subscription Agreement, Plaintiff invested

18  $250,000 in UC Seattle, which Defendant, through the UC Seattle Subscription

19  Agreement, represented would be held in a secure interest-bearing escrow account

20  until such time as UC Seattle used such funds to purchase the Hilton Seattle.

21  97.    Pursuant to the UC Battery Park Subscription Agreement, Plaintiff

22  invested $250,000 in UC Battery Park, which Defendant, through the UC Battery

23  Park Subscription Agreement, represented would be held in a secure interest-bearing

24  escrow account until such time as UC Battery Park used such funds to purchase the

25  Wagner Hotel.

26  98.    Defendant willfully, wrongfully, intentionally, and fraudulently took

27  from the UC Seattle escrow account at least $250,000.00 while acting as an escrow

28  holder and/or fiduciary, which investment funds belong to Plaintiff.  Such investment

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

funds were taken from the UC Seattle escrow account without Plaintiff's consent and in violation of the UC Seattle Subscription Agreement.

99.    Defendant willfully, wrongfully, intentionally, and fraudulently took from the UC Battery Park escrow account at least $250,000.00 while acting as an escrow holder and/or fiduciary, which investment funds belong to Plaintiff.  Such investment funds were taken from the UC Battery Park escrow account without Plaintiff's consent and in violation of the UC Battery Park Subscription Agreement.

100.  Defendant further committed embezzlement and larceny of such investment funds, for his own personal use and/or the use of third-party insiders of Defendant, Wu, Urban Commons, UC Seattle, and/or UC Battery Park.

101.  The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

102.  Based on the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(4), as the debts owed to Plaintiff were obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny.

## FOURTH CLAIM FOR RELIEF

### (Determination of Non-Dischargeability of Debt

### Pursuant to 11 U.S.C. § 523(a)(6))

103.  Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 102 and realleges those allegations as if fully set forth herein.

104.  Defendant, by making direct and indirect representations and omissions to Plaintiff in order to induce him to invest in UC Seattle, inflicted willful and malicious injury on Plaintiff.

105.  In the UC Seattle Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that (i) UC

-28-

Seattle would not use or apply the purchase price for the Hilton Seattle until the necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised for the UC Seattle Offering would be used to invest in UC Seattle, which would acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the UC Seattle Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (v) UC Seattle would obtain a loan in an approximate aggregate amount of Sixty Million Dollars ($60,000,000) to acquire the Hilton Seattle.

106.    In the UC Battery Park Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Battery Park, promised, among other things, that (i) UC Battery Park anticipated completing the UC Battery Park Offering by March 6, 2020; (ii) UC Battery Park would not use or apply the purchase price for the Wagner Hotel until the necessary funds from the UC Battery Park Offering had been raised; (iii) the funds raised for the UC Battery Park Offering would be used to invest in UC Battery Park, which would acquire, own, operate, and eventually sell the Wagner Hotel; (iv) the purchase price for the Wagner Hotel would be deposited into interest-bearing secure bank accounts; (v) if the UC Battery Park Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (vi) UC Battery Park would obtain a loan in an approximate aggregate amount of One Hundred Million Dollars ($100,000,000) to acquire the Wagner Hotel.

107.    Defendant and/or Egnatz, who was acting as an exclusive agent for Urban Commons, which Defendant owns and co-manages, represented to Plaintiff, among other things, that (i) the UC Seattle Offering would be completed by March 2020, (ii) the Hilton Seattle would be sold to EHT within 3-4 months after UC Seattle

acquired the Hilton Seattle, and (iii) Plaintiff would receive a 30% return on his investment.

108.   Defendant, through Egnatz, represented to Plaintiff, among other things, that (i) Plaintiff's investment in UC Battery Park would yield a 70% return on investment, and (ii) the sale of the Wagner Hotel to EHT would be completed by the fourth quarter of 2020.

109.   With regard to the UC Seattle Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the UC Seattle Subscription Agreement and their representations to Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the UC Seattle Subscription Agreement; and (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the UC Seattle Subscription Agreement; and (iv) Defendant had no intention of returning Plaintiff's $250,000 investment in UC Seattle in the event the UC Seattle Subscription Agreement was terminated, and to date, even after receiving Plaintiff's Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment in UC Seattle.

110.   With regard to the UC Battery Park Offering, at the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) Urban Commons already owned the

1    Wagner Hotel at the time it was soliciting subscriptions for membership interest in

2    UC Battery Park; (ii) Defendant never planned to use Plaintiff's investment in UC

3    Battery Park for the acquisition of the Wagner Hotel; (iii) instead of keeping

4    Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC

5    Battery Park and Defendant opened and deposited Plaintiff's investment into a non-

6    refundable escrow account in violation of the UC Battery Park Subscription

7    Agreement and their representations to Plaintiff; (iv) Defendant planned to transfer,

8    and in fact did transfer, at least Fifteen Million Forty-Eight Thousand Dollars

9    ($15,048,000) in funds raised for the UC Battery Park Offering from UC Battery

10   Park to Urban Commons, which Defendant owns and co-manages, in violation of the

11   UC Battery Park Subscription Agreement; (v) Defendant planned to transfer, and in

12   fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000)

13   of the aforementioned funds from Urban Commons, which Defendant owns and co-

14   manages, to Defendant's personally controlled accounts in 2020, despite UC Battery

15   Park's failure to acquire the Wagner Hotel pursuant to the UC Battery Park

16   Subscription Agreement; and (vi) Defendant had no intention of returning Plaintiff's

17   $250,000 investment in UC Battery Park in the event the UC Battery Park

18   Subscription Agreement was terminated, and to date, even after receiving Plaintiff's

19   Notice of Rescission, Defendant has failed to return Plaintiff's $250,000 investment

20   in UC Battery Park.

21          111.   With regard to both the UC Seattle Offering and the UC Battery Park

22   Offering, at the time Defendant made these representations, Defendant knew that

23   such representations were false, because Defendant was well aware that: (i) as of at

24   least 2019, EHT, the entity in which Defendant has ownership interest that was

25   supposed to purchase the Hilton Seattle from UC Seattle and the Wagner Hotel from

26   UC Battery Park, was not performing well; (ii) EH-REIT had defaulted on a Three

27   Hundred and Forty-One Million Dollar (US$341,000,000) facility loan; (iii) EH-

28   REIT's facility loan default dated back to at least December 2019; (iv) since at least

2019, Urban Commons had failed to make timely payments to EHT as master lessee of EHT's properties; (v) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; and (vi) trading of EAGLEHT SP's units had been suspended.

112.    Defendant's conduct was wrongful, was without just cause or excuse, and necessarily caused injury to Plaintiff.

113.    Plaintiff was damaged as a result of Defendant's conduct.

114.    Defendant's actions were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

115.    Based upon the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(6).

## FIFTH CLAIM FOR RELIEF

### (Determination of Non-Dischargeability of Debt
### Pursuant to 11 U.S.C. § 523(a)(19))

116.    Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 115 and realleges those allegations as if fully set forth herein.

117.    Defendant's conduct detailed herein violates Federal securities laws and California securities laws.

118.    Defendant's conduct constitutes a violation of Rule 10b-5 and Section 12 of the Securities Act of 1933.

119.    Defendant's conduct constitutes a violation of California Corporations Code Sections 25110, 25200, 25401, 25403, 25503, 25504, and 25504.1.

120.    Defendant's conduct also constitutes common law fraud and deceit in connection with the purchase of a security.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Ronald A. Christensen prays for judgment against Defendant Taylor Ronald Woods, as follows:

### **ON THE FIRST CLAIM FOR RELIEF:**

1.  For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2.  For judgment against Defendant in a sum of at least $500,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

3.  For punitive damages.

### **ON THE SECOND CLAIM FOR RELIEF:**

4.  For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B);

5.  For judgment against Defendant in a sum of at least $500,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

6.  For punitive damages.

### **ON THE THIRD CLAIM FOR RELIEF:**

7.  For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

8.  For judgment against Defendant in a sum of at least $500,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

9.  For punitive damages.

**ON THE FOURTH CLAIM FOR RELIEF:**

10.    For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

11.    For judgment against Defendant in a sum of at least $500,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

12.    For punitive damages.

**ON THE FIFTH CLAIM FOR RELIEF:**

13.    For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(19);

14.    For judgment against Defendant in a sum of at least $500,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

15.    For punitive damages.

**FOR ALL CAUSES OF ACTION:**

16.    For reasonable attorney's fees and costs awardable under contract pursuant to Section 12 of the Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement;

17.    For reasonable attorney's fees and costs awardable under contract pursuant to Section 12 of the Urban Commons Battery Park, LLC Membership Interest Subscription Agreement;

18.    For costs of suit incurred herein;

19.    For reasonable attorney's fees incurred by Plaintiff, to the extent allowed by law; and

20.    For such other and further relief as the Court may deem just and proper.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

1

## **RESERVATION OF JURISDICTIONAL AND JURY TRIAL RIGHTS**

2     Plaintiff Ronald A. Christensen reserves his rights to trial of the matter

3  consistent with his Constitutional right to the jury trial of all non-bankruptcy claims

4  and issues before the United States District Court, including without limitation, his

5  claims for common law and securities fraud against Defendant.

6

7

## **DEMAND FOR JURY TRIAL**

8     Plaintiff Ronald A. Christensen hereby demands a trial by jury on all causes of

9  action that are triable by jury.

10

11

12

13  DATED:  October 27, 2022

14                    GARCIA RAINEY BLANK & BOWERBANK LLP

15

16                    By        _____/s/ Norma V. Garcia_____

17                              NORMA V. GARCIA
                              JEFFREY M. BLANK

18                              Attorneys for Plaintiff
                              RONALD A. CHRISTENSEN

19

20

21

22

23

24

25

26

27

28

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS