# EXHIBIT 1

<table>
<tr><td>1</td><td>GARCIA RAINEY BLANK & BOWERBANK LLP</td></tr>
</table>

1 | GARCIA RAINEY BLANK & BOWERBANK LLP
A LIMITED LIABILITY PARTNERSHIP
2 | NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
3 | JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
4 | 695 Town Center Drive, Suite 540
Costa Mesa, CA 92626
5 | Telephone:   (714) 382-7000
Facsimile:   (714) 784-0031
6
Attorneys for Plaintiffs
7 | Clifford A. Rosen, MD and Ronald A. Christensen, MD.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD A. ROSEN, an individual; RONALD A. CHRISTENSEN, an individual | **Case No.:** 8:20-cv-01973-JLS-DFM |
| Plaintiffs, | **THIRD AMENDED COMPLAINT FOR:** |
| vs. | **(1)** **VIOLATION OF SECTION 5 OF THE SECURITIES AND EXCHANGE ACT;** |
| URBAN COMMONS, LLC, a Delaware Limited Liability Company; URBAN COMMONS 6TH AVE SEATTLE, LLC, a Delaware Limited Liability Company; URBAN COMMONS BATTERY PARK, LLC, a Delaware Limited Liability Company; CHICAGO ANALYTIC TRADING COMPANY, LLC, d/b/a LITTLERIVER CAPITAL, LLC, a Delaware Limited Liability Company; DIGITAL CAPITAL MARKETS, LLC, a Maryland Limited Liability Company; TAYLOR WOODS, an individual; HOWARD WU, an individual; C. BRIAN EGNATZ, an individual; DOE DEFENDANT 1 WU DEVELOPMENT, LLC, a California Limited Liability Company; DOE DEFENDANT 2 JASON BIRT, an individual and DOES 1 through 8, inclusive | **(2)** **VIOLATION OF SECTION 12 OF THE 1933 SECURITIES ACT;** |
| | **(3)** **VIOLATION OF SECTION 15 OF THE 1933 SECURITIES ACT;** |
| | **(4)** **VIOLATION OF SECTION 17 OF THE 1933 SECURITIES ACT;** |
| | **(5)** **VIOLATION OF SECTION 10(b) OF THE 1934 SECURITIES AND EXCHANGE ACT AND RULE 10b-5;** |
| | **(6)** **VIOLATION of Cal. Corp. Code §§ 25401 & 25501;** |
| | **(7)** **VIOLATION of Cal. Corp. Code §§ 2400 & 25500** |
| | **(8)** **VIOLATION of Cal. Corp. Code § 25403;** |
| | **(9)** **VIOLATION of Cal. Corp. Code §§ 25503, 25504.1 & 25110;** |
| Defendants | **(10)** **VIOLATION of Cal. Corp. Code § 25504;** |
| | **(11)** **VIOLATION OF Cal. Corp. Code §§ 25401 & 25504.1** |
| | **(12)** **VIOLATION OF Cal. Corp. Code §§ 25200, et seq. & 25501.5;** |
| | **(13)** **THEFT BY FALSE PRETENSE (Cal. Penal Code §496(c))** |
| | **(14)** **CONSTRUCTIVE FRAUD;** |
| | **(15)** **FRAUD—FALSE PROMISE;** |

- 1 -

(16) **FRAUD—CONCEALMENT;**
(17) **FRAUD—INTENTIONAL MISREPRESENTATION;**
(18) **NEGLIGENT MISREPRESENTATION;**
(19) **NEGLIGENCE;**
(20) **VIOLATIONS OF Cal. Corp. Code § 17704.41; and**
(21) **Unfair Business Practices (Cal. Bus. Code. § 172000)**

**DEMAND FOR JURY TRIAL**

- 2 -

Plaintiffs Clifford A. Rosen, MD and Ronald A. Christensen, MD. (collectively, "Plaintiffs") complain and allege as follows against Defendants URBAN COMMONS, LLC ("URBAN COMMONS"), URBAN COMMONS 6TH AVE SEATTLE ("UC SEATTLE"), URBAN COMMONS BATTERY PARK, LLC ("UC BATTERY PARK"), TAYLOR WOODS ("WOODS"), HOWARD WU ("WU"), C. BRIAN EGNATZ ("EGNATZ"), DOE DEFENDANT 2 JASON BIRT ("BIRT"), and DOES 3 through 8 ("DOE Defendants") (collectively, "Defendants") as follows:

## NATURE OF ACTION

1.      This action stems from the unscrupulous, fraudulent and unlawful sales, within this District, of unregistered and non-exempt securities by Defendants to Plaintiffs. The Defendants misled the Plaintiffs into investing $750,000 in January and March of 2020, falsely promising that said offerings would be completed within weeks and months of such investment.  All the while, Defendants knew their parent company was being investigated for securities violations in Singapore. Worse yet, Defendants knew they were in default of a facility loan critical to their ongoing operations. Yet, none of these material facts were disclosed to Plaintiffs.

2.      Plaintiffs allege that all Defendants conspired and committed violations of Federal and California Securities Laws (defined below) and other statutes, as well as actual and constructive fraud, intentional misrepresentation, and/or negligent misrepresentations, and other torts for which Plaintiffs seek relief and remedies herein.

3.      Plaintiffs seek damages and/or rescission of securities sale contracts and transactions at issue, with restitution, monies on common counts, and other relief in this action.

## JURSIDICTION AND VENUE

4.      This Court has jurisdiction of this action and of the parties pursuant to 28 U.S.C. §§ 1331 and 1332, and by diversity of citizenship. Plaintiffs assert claims herein pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j and 78t], and Rule 10b-5 promulgated thereunder [17 C.F.R. §

- 3 -

240.10b-5], and under 17 C.F.R. § 230. 405. The Exchange Act, and the rules and regulations issued thereunder, including Rule 10b-5, and other relevant Federal securities statutes, regulations and authorities are hereafter collectively referred to as the "Federal Securities Laws."

5.    Defendants, directly or through their agents and representatives, are and have been engaged in regular, continuing and substantial activities, communications, transactions and conduct within this District, throughout California and in other States of the United States ["Other States"], and other United States citizens.

6.    This Court has pendent, supplemental and ancillary jurisdiction over Plaintiffs' state court claims for relief pursuant to 25 U.S.C. § 1367 in that such claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

7.    Plaintiffs' Federal and California Securities Laws claims, and California statutory and common law claims, are so interrelated and relevant to each other as to constitute the same controversy, dispute and case under Article III of the United States Constitution.

8.    This Court also has jurisdiction by 28 U.S.C. § 1332 based on the complete diversity among the parties, and the amount in controversy exceeds $75,000.00.

9.    Venue is proper in the Central District of California, including under Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and 28 U.S.C. § 1391(b).

## **PARTIES**

10.    Plaintiff Clifford A. Rosen, MD (hereinafter "DR. ROSEN"), is an individual residing in Lakeshore, Ontario, Canada.

11.    Plaintiff Ronald A. Christensen, MD (hereinafter, "DR CHRISTENSEN"), is an individual residing in Scottsdale, Arizona.

12.    Defendant Urban Commons, LLC (hereinafter, "URBAN COMMONS"), is a Delaware Limited Liability Company with its principal place of business in Los Angeles, California. In particular, Urban Commons is a privately held real estate investment trust

1    (REIT) management company.

2    13.    Defendant Urban Commons 6th Ave. Seattle (hereinafter, "UC SEATTLE")

3    is a Delaware Limited Liability Company whose Managers and/or Members are citizens

4    and residents of Los Angeles County, State of California.

5    14.    Defendant Urban Commons Battery Park, LLC (hereinafter, "UC BATTERY

6    PARK") is a Delaware Limited Liability Company whose Managers and/or Members are

7    citizens and residents of Los Angeles County, State of California.

8    15.    Plaintiffs are informed and believe that defendant Taylor Woods (hereinafter,

9    "WOODS") is, and at all relevant times herein was until recently, an individual residing in

10   the State of California, County of Orange, and conducting business in the State of

11   California, County of Los Angeles.

12   16.    Plaintiffs are informed and believe that defendant Howard Wu (hereinafter,

13   "WU") is, and at all relevant times herein was, an individual residing in the State of

14   California, County of Orange and conducting business in the State of California, County of

15   Los Angeles.

16   17.    Plaintiffs are informed and believe that defendant C. Brian Egnatz

17   (hereinafter, "EGNATZ") is, and at all relevant times herein was, an individual residing in

18   New York, New York and conducting business in the State of California.

19   18.    Plaintiffs are informed and believe that defendant WOODS is a Member

20   and/or Manager of URBAN COMMONS.

21   19.    Plaintiffs are informed and believe that defendant WU is Manager and/or

22   Member of URBAN COMMONS.

23   20.    Plaintiffs are informed and believe that Doe Defendant 2 Jason Birt

24   (hereinafter "BIRT") is an individual residing in Carroll, Iowa, and conducting business in

25   the State of California, County of Los Angeles.

26   21.    Plaintiffs are informed and believe that defendant EGNATZ is a member of

27   the Board of Directors of URBAN COMMONS.

28   22.    Plaintiffs are informed and believe that defendant URBAN COMMONS is

- 5 -

the sole Manager of UC SEATTLE.

23.    Plaintiffs are informed and believe that defendant URBAN COMMONS is the sole Manager of UC BATTERY PARK.

## GENERAL ALLEGATIONS

**UC Seattle**

24.    In or about January 2020, URBAN COMMONS issued a private offering ("UC Seattle Offering") to investors seeking to raise Forty Million Dollars ($40,000,000) in membership interest in Urban Commons 6th Ave Seattle, LLC ("UC SEATTLE"). UC SEATTLE is the single purpose limited liability company through which Defendants were going to purchase the real property known as Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington ("Hilton Seattle"). A true and correct copy of the Membership Interest Subscription Agreements for Plaintiffs Ronald Christensen, MD and Clifford A. Rosen, MD are attached hereto as **Exhibits A and B**.

25.    On or about January 15, 2020, Plaintiffs had a telephone call with Defendants, including WOODS and EGNATZ, about investing in UC SEATTLE. During this telephone call, Defendants represented to Plaintiffs, among other things that, after UC SEATTLE acquired the Hilton Seattle, the holding period would be about 3-4 months, at which point UC SEATTLE would sell the Hilton Seattle to Eagle Hospitality Trust ("EHT"). EHT is a hospitality stapled group sponsored by URBAN COMMONS and comprised of Eagle Hospitality Real Estate ("EH-REIT") and Eagle Hospitality Business Trust ("EH-BT"). During this call, Defendants further represented to Plaintiffs that Plaintiffs would receive a 30% return on their investment.

26.    Based on these and other representations alleged throughout this Complaint, false representations that these were "great deals," and that Plaintiffs would be "great additions" to the "family", Plaintiffs both participated in the UC Seattle Offering.

27.    DR. CHRISTENSEN, in reliance on the misrepresentations detailed throughout this Complaint, invested Two Hundred and Fifty Thousand Dollars ($250,000.00) in UC SEATTLE. Specifically, on or about January 21, 2020, DR.

- 6 -

CHRISTENSEN executed a Membership Interest Subscription Agreement with UC SEATTLE ("UC Seattle Subscription Agreement"). On that same day, DR. CHRISTENSEN, via a wire transfer, remitted his investment of Two Hundred and Fifty Thousand Dollars ($250,000.00) to URBAN COMMONS.

28.    DR. ROSEN, in reliance on the misrepresentations detailed throughout this Complaint, invested Two Hundred and Fifty Thousand Dollars ($250,000.00) in UC SEATTLE. Specifically, on or about January 29, 2020, DR. ROSEN executed a Membership Interest Subscription Agreement with UC SEATTLE and via a wire transfer, remitted his investment of Two Hundred and Fifty Thousand Dollars ($250,000.00) to URBAN COMMONS.

29.    The UC Seattle Subscription Agreement expressly stated that "the Company (UC Seattle) will not use or apply the purchase price until the Company has raised the necessary funds from this offering. The funds raised for the offerings will be used to invest in an entity which shall acquire, own, operate, and eventually sell that certain property known as the Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington (the "Property.")

30.    The UC Seattle Subscription Agreement further stated that "(i) the purchase price will be deposited into an interest-bearing secure bank account and (ii) all interest earned on such account will be used by the Company to pay all costs and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of the Company."

31.    The UC Seattle Subscription Agreement further stated that in the event the subscription were terminated, "all funds raised by the Company will be returned to the applicable investors, together with any interest remaining on such funds following the payment of all costs and expenses."

32.    The UC Seattle Subscription Agreement further stated that the Company would be obtaining acquisition loans in an approximate aggregate amount of approximately Sixty Million Dollars ($60,000,000.00) in order to acquire and refurbish the Property.

33.    Defendants represented that the UC Seattle Offering would be completed by March 2020.

34.    Plaintiffs are informed and believe and therefore allege that during the marketing and solicitation of investments in the membership interest of UC SEATTLE, Defendants misrepresented to Plaintiffs that as of the week of January 6, 2020, Defendants had already raised Twenty Five Million Dollars ($25,000,000) from its offering of membership interests in UC SEATTLE and that WOODS had personally invested Five to Ten Million Dollars ($5,000,000 - $10,000,000).

35.    Plaintiffs are informed and believe and therefore allege that to date, Defendants have not completed their offering for UC SEATTLE nor have Defendants raised the Forty Million Dollars ($40,000,000) from its offering of membership interests in UC SEATTLE.

36.    Plaintiffs are informed and believe and therefore allege that to date, Defendants have not obtained a financing commitment for the acquisition loans in an approximate aggregate amount of Sixty Million Dollars ($60,000,000.00) in order to acquire and refurbish the Hilton Seattle.

37.    Plaintiffs are informed and believe and therefore allege that to date, Defendants have not acquired or refurbished the Hilton Seattle.

**UC Battery**

38.    In or about February 2020, URBAN COMMONS issued a private offering ("UC Battery Park Offering") to investors seeking to raise Seventy Million Dollars ($70,000,000.) in membership interest in Urban Commons Battery Park, LLC ("UC BATTERY PARK"). UC BATTERY PARK is the single purpose limited liability company through which Defendants were going to purchase the real property known as the Wagner Hotel (formerly known as the Ritz-Carlton Battery Park), located in lower Manhattan at 2 West Street, New York, New York ("Wagner Hotel"). A true and correct copy of the UC Battery Park Membership Interest Subscription Agreement is attached hereto as **Exhibit C**.

THIRD AMENDED COMPLAINT

39.    On or about February 26, 2020, DR. CHRISTENSEN had a telephone call with Tina Ellis and EGNATZ about investing in UC BATTERY PARK. During this telephone call, EGNATZ represented to DR. CHRISTENSEN, among other things, that investing in UC BATTERY PARK would yield a 70% return on investment and that the sale of the Wagner Hotel to EHT would be completed by the fourth quarter of 2020.

40.    DR. CHRISTENSEN participated in the UC Battery Park Offering. Specifically, in reliance on the misrepresentations detailed throughout this Complaint, DR. CHRISTENSEN invested Two Hundred and Fifty Thousand Dollars ($250,000.00) in UC BATTERY PARK. Specifically, on or about February 27, 2020, DR. CHRISTENSEN executed a Membership Interest Subscription Agreement with UC BATTERY PARK ("UC Battery Park Subscription Agreement"). Thereafter, on or about March 3, 2020, DR. CHRISTENSEN, via a wire transfer, remitted his investment of Two Hundred and Fifty Thousand Dollars ($250,000.00) to URBAN COMMONS.

41.    The UC Battery Park Subscription Agreement expressly stated that the UC Battery Park Offering would be completed by March 6, 2020.

42.    The UC Battery Subscription Agreement stated that "the Company (UC Battery Park) will not use or apply the purchase price until the Company has raised the necessary funds from this offering. The funds raised for the offerings will be used to invest in an entity which shall acquire, own, operate, and eventually sell that certain property formerly known as The Ritz-Carlton New York, Battery Park, NY (the "Property")."

43.    The UC Battery Park Subscription Agreement further stated that "(i) the purchase price will be deposited into an interest-bearing secure bank account and (ii) all interest earned on such account will be used by the Company to pay all costs and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of the Company."

44.    The UC Battery Park Subscription Agreement stated that in the event the subscription were terminated, "all funds raised by the Company will be returned to the applicable investors, together with any interest remaining on such funds following the

1    payment of all costs and expenses."

2         45.    The UC Battery Subscription Agreement stated that the Company would be

3    obtaining loans in an approximate aggregate amount of One Hundred Million Dollars

4    ($100,000,000.00) in order to acquire the Property.

5         46.    Plaintiffs are informed and believe and therefore allege that to date,

6    Defendants have not completed the UC Battery Park Offering nor have Defendants raised

7    the Seventy Million Dollars ($70,000,000.) from its offering of membership interests in UC

8    BATTERY PARK.

9         47.    Plaintiffs are informed and believe and therefore allege that to date,

10   Defendants have not obtained a financing commitment for the acquisition loans in an

11   approximate aggregate amount of One Hundred Million Dollars ($100,000,000.00) in order

12   to acquire and refurbish the Wagner Hotel.

13        48.    Plaintiffs are informed and believe and therefore allege that to date,

14   Defendants have not acquired and refurbished the Wagner Hotel.

15        49.    Plaintiffs deposed defendant EGNATZ on August 5, 2021.  During the

16   deposition, EGNATZ testified about his working relationship with BIRT and confirmed

17   that EGNATZ worked with BIRT.  During that deposition EGNATZ also authenticated an

18   email where EGNATZ confirmed he and BIRT were "exclusive" agents in placing

19   securities for the Urban Common LLC entities, including UC BATTERY PARK and UC

20   SEATTLE. BIRT is copied on this email and BIRT does not correct this representation that

21   he and EGNATZ are "exclusive" agents for the UC entities. In this email, BIRT and

22   EGNATZ further direct Tina Ellis, who liaised for Plaintiffs, not to contact WOODS

23   directly—that all communications must be filtered through BIRT or EGNATZ—and that

24   they would determine who should be contacted at URBAN COMMONS.  Again, BIRT did

25   not respond to these emails to deny or dispute these statements.

26        50.    During this deposition, Plaintiffs also learned that BIRT received

27   compensation from Urban Commons LLC.  Plaintiffs are informed and believe and

28   therefore allege that BIRT acted as a compensated unregistered sales agent on behalf of

THIRD AMENDED COMPLAINT

1   URBAN COMMONS to market, offer, and sell membership interests in UC SEATTLE and

2   UC BATTERY PARK to investors such as Plaintiffs.

3        51.    Plaintiffs are informed and believe and therefore allege that EGNATZ acted

4   as a compensated unregistered sales agent on behalf of URBAN COMMONS to market,

5   offer, and sell membership interests in UC SEATTLE and UC BATTERY PARK to

6   investors such as Plaintiffs. Plaintiffs are informed and believe and therefore allege that at

7   all times relevant herein, EGNATZ operated individually and (i) through CHICAGO

8   ANALYTIC and LITTLE RIVER as a Partner from April 2019 through May 2020 and as

9   a FINRA-registered broker from May 2019 through May 2020; (ii) through DIGITAL

10  CAPITAL as a FINRA-registered broker from June 2020 through November 2020; and (iii)

11  through Milepost Real Estate, LLC as Founder from May 2019 through the present, and

12  (iv) Milepost Capital Management, LLC as CIO from February 2016 through the present.

13  (*See* **Exhibit H**.)

14       52.    Plaintiffs further allege that EGNATZ aggressively solicited and induced

15  Plaintiffs into collectively investing $750,000 in membership interests in UC SEATTLE

16  and UC BATTERY PARK (collectively, the "Securities Transactions") by falsely

17  representing that EGNATZ's prior investments with URBAN COMMONS had earned a

18  cash on cash return of 30% in three and one-half months. Plaintiffs are further informed and

19  believe and therefore allege that when EGNATZ sold Plaintiffs the unregistered securities,

20   EGNATZ was not licensed under federal and/or state law or exempt from any licensing

21  requirements.

22       53.    Plaintiffs further allege on information and belief that EGNATZ and BIRT

23  worked together to concoct their "pitch" to Plaintiffs and other potential investors.  In doing

24  so, they knowingly and intentionally misrepresented material facts and omitted material

25  facts from Plaintiffs and others like them.  Plaintiffs are further informed and believe and

26  therefore allege that when BIRT sol Plaintiffs the unregistered securities, BIRT was not

27  licensed under federal and/or state law or exempt from any licensing requirements.

28

THIRD AMENDED COMPLAINT

54.     BIRT along with EGNATZ represented themselves as exclusive agents for URBAN COMMONS, UC BATTERY, and UC SEATTLE to Plaintiffs.   BIRT, as EGNATZ's partner, engaged directly and aided and abetted EGNATZ and the other DEFENDANTS in luring Plaintiffs to invest in UC SEATTLE and UC BATTERY PARK. On information and belief, and on that basis, Plaintiffs allege that BIRT is an unregistered agent who engaged in the sale of securities for URBAN COMMONS, UC SEATTLE and UC BATTERY PARK.

55.     BIRT, along with EGNATZ, as admitted "exclusive" agents in placing securities for URBAN COMMONS, UC BATTERY PARK, and UC SEATTLE in Plaintiffs' investment in UC BATTERY PARK and UC SEATTLE, owed a duty of care to Plaintiffs.

56.     Plaintiffs further allege that the securities which URBAN COMMONS sold to Plaintiffs were unregistered in violation of the Securities Act of 1933 and were not exempt from such registration or qualification under the Securities Act of 1933. Therefore, the offer and sale of membership interests by Defendants in UC SEATTLE and UC BATTERY PARK violated the Securities Act of 1933 and California securities law.

57.     Plaintiffs are informed and believe and therefore allege that in or about May 2019, URBAN COMMONS went public on the Singapore Stock Exchange as EAGLEHT SP. Plaintiffs are informed and believe and therefore allege that WOODS and WU own 17% of the equity in EAGLEHT and were and/or are Chairman and Deputy Chairman, respectively of the EAGLEHT board.

58.     During the marketing and solicitation of investments in the membership interest of UC SEATTLE and UC BATTERY PARK, Defendants further misrepresented that URBAN COMMONS would invest 10-25% of the equity in the purchase of the Seattle Hilton and the Wagner Hotel. Plaintiffs are informed and believe and therefore allege that at the time these misrepresentations were made, Defendants knew these misrepresentations were false and made them in order to induce Plaintiffs into investing in UC SEATTLE and UC BATTERY PARK.

59.    During the marketing and solicitation of investments in the membership interests of UC SEATTLE and UC BATTERY PARK, Defendants misrepresented that the membership interest in UC SEATTLE would be sold to EAGLEHT by early summer of 2020 and the membership interest in UC BATTERY PARK would be sold to EAGLEHT by the fourth quarter of 2020. Plaintiffs are informed and believe and therefore allege that at the time these misrepresentations were made, Defendants knew these misrepresentations were false and made them in order to induce Plaintiffs into investing in UC SEATTLE and UC BATTERY PARK.

60.    During the marketing and solicitation of investments in the membership interest of UC BATTERY PARK, Defendants misrepresented that investment in UC BATTERY PARK would yield a significant return on investment as a result of the purported $500,000 per door purchase price for the Wagner Hotel.  Plaintiffs are informed and believe and therefore allege that at the time these misrepresentations were made, Defendants knew these misrepresentations were false and made them in order to induce DR. CHRISTENSEN into investing in UC BATTERY PARK.

61.    Plaintiffs are informed and believe and therefore allege that at the time Defendants issued its offering of membership interests in UC SEATTLE and UC BATTERY PARK to Plaintiffs (between January and March 2020), Defendants knew EAGLEHT was not performing well and failed to disclose this material fact to Plaintiffs. Specifically, Defendants knew that EH-REIT had defaulted on a Three Hundred and Forty-One Million Dollar (US$341,000,000.00) facility loan. Indeed, as Defendants made these written and verbal material misrepresentations between January 2020 and March 2020 to Plaintiffs, Defendants had already defaulted on their US$341,000,000 facility loan and trading of EAGLEHT units was suspended.  On information and belief, and on that basis, Plaintiffs allege that Defendants' default was caused by the failure of URBAN COMMONS, the master lessee of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements, and make timely rental payments. Importantly, this default started in or about December 2019.

62.     Plaintiffs are informed and believe and therefore allege that at the time Defendants issued its offering of membership interests in UC SEATTLE and UC BATTERY PARK to Plaintiffs (between January and March 2020), Defendants knew EAGLEHT was not performing well, knew EH-REIT had defaulted on its US$341,000,000.00 facility loan, and knew trading of EHT had been suspended, and despite knowing this, Defendants still represented to Plaintiffs that by investing in UC SEATTLE and UC BATTERY PARK, there would be no exposure to Singapore market fluctuations or risk.

63.     Further, Plaintiffs are informed and believe and therefore allege that at the time Defendants issued its offering of membership interests in UC SEATTLE and UC BATTERY PARK, Defendants knew they were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT.

64.     Plaintiffs are informed and believe and therefore allege that as a result of the loan default, trading of EHT units was voluntarily suspended on or about March 24, 2020, only 21 days after Defendants received DR. CHRISTENSEN'S $250,000 investment in UC BATTERY PARK.

65.     Plaintiffs further allege that during the marketing and solicitation of investments in the membership interest of UC SEATTLE and UC BATTERY PARK, Defendants failed to disclose that Defendants had failed to make timely rental payments since 2019 and failed to disclose to Plaintiffs the default by URBAN COMMONS.

66.     Plaintiffs further allege that when Plaintiffs asked Defendants about EH-REIT defaulting on its US$341 million facility loan and EAGLEHT's problems with the Singapore government, Defendants told Plaintiffs these problems were irrelevant as Defendants had been able to find a new funder for EHT.

67.     Defendants made misrepresentations of material facts and omitted material facts concerning URBAN COMMONS, WOODS, and WU in the offering of the

membership interests in UC SEATTLE and UC BATTERY PARK. Plaintiffs relied on such misrepresentations in deciding to invest. But for such misrepresentations and material omissions, Plaintiffs would not have invested $750,000 (collectively) in UC SEATTLE and UC BATTERY PARK.

68. In sum, in their pitch to solicit the purchase of membership interests in UC SEATTLE and UC BATTERY PARK by Plaintiffs, DEFENDANTS, by means of written and oral communications, made untrue statements of material facts and omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading, including, inter alia:

    a. They materially misrepresented and omitted material facts concerning their credentials, experience, expertise, and capabilities in order to induce the trust and confidence of Plaintiffs and other investors and lenders;

    b. They failed to disclose the default by URBAN COMMONS on the Master Lease Agreements with EHT that occurred prior to the offering and EHT's subsequent default and acceleration of its Three Hundred and Forty-One Million Dollar (US$341,000,000.00) loan;

    c. They materially misrepresented the value of the return on investment, claiming the net returns for investors such as Plaintiffs would be "significant" and "repeatable";

    d. They failed to disclose and omitted material facts concerning URBAN COMMONS, WOODS, and WU in the offering of the membership interests;

    e. They materially misrepresented and omitted material facts concerning the completion dates for the offerings and the dates on which the Seattle Hilton and the Wagner Hotel would be sold to EAGLEHT;

    f. They materially misrepresented and omitted material facts concerning raising the necessary funds from the offering of membership interests in order to purchase the Seattle Hilton and the Wagner Hotel; and

    g. They materially misrepresented and omitted material facts concerning the

- 15 -

1     status of the investment, acquisition of the Seattle Hilton and the Wagner

2     Hotel, and escrow account allegedly holding Plaintiffs' investment.

3     69.     On May 17, 2020, Plaintiffs provided URBAN COMMONS, UC SEATTLE,

4     LLC, UC BATTERY PARK, WOODS and WU with written correspondence wherein

5     Plaintiffs provided Defendants with notice of Plaintiffs' rescission of their respective

6     subscriptions for membership interests in UC SEATTLE and UC BATTERY PARK

7     respectively. In said written correspondence, Plaintiffs demanded remittance of their

8     $750,000 investments ($250,000 for Dr. Clifford and $500,000 for Dr. Christensen). Much

9     to Plaintiffs' dismay, Defendants, to date, have failed to reimburse Plaintiffs' respective

10    investments. A copy of the Notice of Recession is attached hereto as **Exhibit D**.

11    70.     Importantly, before noticing rescission, Plaintiffs requested from Defendants

12    proof that either: (i) the UC Seattle Offering and UC Battery Park Offering had been

13    completed and the Seattle Hilton and the Wagner Hotel had been acquired or (ii) that

14    Plaintiffs' investments were being held in a segregated interest-bearing escrow account.

15    Defendants, to date, have failed to honor Plaintiff's request, providing no proof whatsoever.

16    71.     On or about June 6, 2020, Plaintiffs requested information from URBAN

17    COMMONS, UC SEATTLE, and UC BATTERY PARK pursuant to the provisions of the

18    UC SEATLE Operating Agreement and UC BATTERY PARK Operating Agreement

19    respectively and applicable law (the "Information Request"). A copy of the Information

20    Request is attached hereto as **Exhibit E**.

21    72.     On or about June 19, 2020, Defendants produced 282 bates stamped

22    documents comprised of 11,966 pages. On or about June 21, 2020, Plaintiffs, via written

23    correspondence, notified Defendants of the deficiencies in Defendants' document

24    production in response to Plaintiffs' Information Request. In particular, Plaintiffs informed

25    Defendants that Defendants' document dump was, with limited exception, nonresponsive

26    to the Information Request. Specifically, not a single page was produced evidencing that:

27        (i)     Plaintiffs were members of either UC SEATTLE or UC BATTERY

28               PARK;

THIRD AMENDED COMPLAINT

(ii)   the 2020 offerings of membership in which Plaintiffs participated occurred;

(iii)   Plaintiffs' funds were deposited into interest-bearing secure bank accounts;

(iv)   Plaintiffs' initial membership interests were reflected in the UC SEATTLE Operating Agreement and UC BATTERY PARK Operating Agreement respectively;

(v)   UC SEATTLE completed its offering and raised the necessary funds of $40 million from its offering of membership interests;

(vi)   UC SEATTLE obtained a financing commitment for the acquisition loan in an approximate aggregate amount of US$60 million in order to acquire and refurbish the Hilton Seattle; and

(vii)   UC BATTERY PARK completed its offering and raised the necessary funds of US$70 million from its offering of membership interests.

73.   In their June 21, 2020 written correspondence, Plaintiffs renewed their demand of May 17, 2020 for the return of their investment and reimbursement of professional fees. However, to date, Plaintiffs have neither been reimbursed nor have they received any evidence that their collective $750,000 investment was used to acquire the Hilton Seattle or the Wagner Hotel, or that the funds are being kept in an interest-bearing escrow account. A copy of Plaintiffs' June 21, 2020 letter is attached hereto as **Exhibit F**.

74.   On June 30, 2020, Plaintiffs provided EGNATZ and CHICAGO ANALYTIC with written correspondence wherein Plaintiffs provided Defendants with notice of Plaintiffs' rescission of their respective subscriptions for membership interests in UC SEATTLE and UC BATTERY PARK, respectively. In said written correspondence, Plaintiffs demanded remittance of their $750,000 investments ($250,000 for Dr. Rosen and $500,000 for Dr. Christensen). Defendants, to date, have failed to reimburse Plaintiffs' respective investments and have refused to provide any explanation on the status of the alleged offering and the Plaintiffs' respective investments. A copy of the June 30, 2020

- 17 -

Notice of Recession is attached hereto as **Exhibit G**.

75.     Thus, Plaintiffs currently are unaware of where their collective $750,000 investment went or how it was used by Defendants.  Defendants refuse to provide an accounting of same.  Plaintiffs fear that Defendants have absconded the $750,000.

76.     The UC Seattle and UC Battery Park Subscription Agreements both expressly provide that should the offerings not be completed timely; the investments would be returned to each Plaintiff with interest.  Defendants have refused to do so even though they failed to timely complete the offering and/or acquire the properties.

## **ALTER EGOS**

77.     On information and belief, and on that basis, Plaintiffs allege that Defendants URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK are shell companies being used as instrumentalities and conduits for a single venture controlled by Defendant WOODS and his cohort WU, and Doe Defendants ("DOES") 1 through 10.  On information and belief, Plaintiffs allege that URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK are the alter egos of WOODS and WU, by reason of the following:

a.  Plaintiffs are informed and believe that there exists a unity of interest and ownership between WOODS and WU on the one hand, and URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK, on the other hand, such that any individuality and separateness between WOODS and WU on the one hand and URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK on the other hand, does not exist.

b.  Plaintiffs are informed and believe that WOODS and WU exercise complete control and dominance over URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK and, consequently, URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK are mere shells, instrumentalities, and conduits through which WOODS and WU carry on a single enterprise as part of an association-in-fact enterprise.

c.  Plaintiffs are informed and believe and thereon allege that WOODS and WU at all times herein mentioned, dominated, influenced and controlled URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK, and any officers or directors

1   other than WOODS and WU, as well as the business, property, and affairs of URBAN

2   COMMONS, UC SEATTLE, and UC BATTERY PARK.

3          d.   Plaintiffs are informed and believe and thereon allege that, at all times

4   herein mentioned, URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK were

5   created and continued pursuant to a fraudulent plan, scheme, and device conceived and

6   operated by an associate-in-fact enterprise formed by WOODS and WU, whereby income,

7   revenue and profits of URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK

8   were diverted to WOODS and WU through their positions as Principals, Managers or

9   Managing Member of such entities.

10          e.   Plaintiffs are informed and believe and thereon allege that, at all times

11   herein mentioned, URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK were

12   organized by WOODS and WU as a device to defraud Plaintiffs of their investment in UC

13   SEATTLE and UC BATTERY PARK.

14          f.   By virtue of the foregoing, adherence to the fiction of the separate corporate

15   existence of URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK would,

16   under the circumstances, sanction a fraud and promote injustice in that Plaintiffs may be

17   unable to realize upon any judgment in their favor.  Plaintiffs are informed and believe and

18   thereon allege that, at all times relevant hereto, the individual Defendants WOODS and

19   WU, and entities URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK acted

20   for each other in connection with the conduct herein alleged and that each of them

21   performed the acts complained of herein or breached the duties herein complained of as

22   agents of each other and each is therefore fully liable for the acts of the other.

23                              **DOE DEFENDANTS**

24          78.   Plaintiffs are unaware of the true names and capacities, whether individual,

25   corporate, associate, or otherwise, of DOES 1 through 8, inclusive, or any of them, and are

26   gathering information to determine if other known entities or individuals are complicit in

27   Defendants' wrongdoing, and therefore sues these defendants, and each of them, by such

28   fictitious names.  Plaintiffs will either file a DOE amendment and/or an amended complaint

and/or seek leave of this Court to amend this complaint when the status and identities of these defendants are ascertained or when Plaintiffs determine claims against known entities or individuals are warranted. The Doe defendants include individuals and entities assisting or acting in concert with Defendants in connection with the acts complained of herein.

79. Each fictitiously named defendant was in some way responsible for, participated in, or contributed to the matters of which Plaintiffs complain, and has legal responsibility for those matters. Each of DOES 1 through 8 was in some way responsible for, participated in, or contributed to the matters of which Plaintiffs complain in the causes of action in which they are named.

## **CONSPIRACY**

80. Defendants URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, WOODS, WU, EGNATZ, BIRT and Doe Defendants 3 through 8 formed a plan to engage in a conspiracy to commit wrongful conduct, and all agreed to the shared common plan and were each aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent. Plaintiff alleges that to the extent that WOODS and WU and URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK are found to be alter egos of each other, then they acted together as one conspiring unit with DOES 1 through 8; as an alternative theory of liability in the event that URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK are not found to be an alter ego of WOODS and WU, then Plaintiffs allege that such non-alter ego entities URBAN COMMONS, UC SEATTLE, and UC BATTERY PARK were separate co-conspirators, *see Webber v. Inland Empire Investments* (1999) 74 Cal. App. 4th 884, 900-01.

81. Defendants EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, BIRT and DOES 3 through 8 aided and abetted the commission of the wrongful conduct alleged in this Complaint by WOODS and WU. Defendants EGNATZ, as a director of URBAN COMMONS, and BIRT as his admitted partner in acting as "exclusive" agents for URBAN COMONS, as well as URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, and DOES 3 through 8 knew that the conduct of

- 20 -

WOODS and WU constitutes a breach of duty and/or wrongful conduct and provided substantial assistance or encouragement to WOODS and WU to so act. Further, WOODS and WU, as managers and/or members of URBAN COMMONS, aided and abetted the commission of the wrongful conduct alleged in this Complaint by EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY, BIRT and DOES 3 through 8. WOODS and WU knew that the conduct of Defendants EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, BIRT and DOES 3 through 8 constitutes a breach of duty and/or wrongful conduct and provided substantial assistance or encouragement to EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY, BIRT and DOES 3 through 8, to so act.

82. Plaintiffs are informed and believe that DOES 3 through 8 were part of the planned conspiracy to commit wrongful conduct, and all agreed to the shared common plan and were each aware that each other, WOODS, WU, EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, and BIRT planned to participate in the plan and that the plan was unlawful and fraudulent. Plaintiffs are informed and believe that DOES 3 through 8 aided and abetted the commission of the wrongful conduct alleged in this Complaint by WOODS, WU, EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, and BIRT. DOES 3 through 8 knew that the conduct of WOODS, WU, EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, and BIRT constitutes a breach of duty and/or wrongful conduct and provided substantial assistance or encouragement to WOODS, WU, EGNATZ, URBAN COMMONS, UC SEATTLE, UC BATTERY PARK, and BIRT to so act.

## **FIRST CAUSE OF ACTION**

### **(Violation of Section 5 of the Securities and Exchange Act Against All Defendants, and Does 3 through 8, Inclusive)**

83. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 82 and reallege those allegations as if fully set forth herein.

84. By engaging in the conduct described above, Defendants, directly or

- 21 -

indirectly, singly and in concert: (i) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (ii) carried securities or caused such securities to be carried through the mails or the interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and/or (iii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails offer to sell or offer to buy securities, through the use or medium of any prospectus or otherwise.

85.     No registration statement was filed or was in effect with the Securities Exchange Commission ("SEC") pursuant to the Securities Act, and no exemption from registration exists with respect to the offering and sale of securities to Plaintiffs described herein.

86.     By reason of the foregoing, Defendants violated Section 5 of the Securities and Exchange Act.

## **SECOND CAUSE OF ACTION**

**(Violation of Section 12 of the Securities and Exchange Act Against All Defendants, and Does 3 through 8, Inclusive)**

87.     Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 86 and reallege those allegations as if fully set forth herein.

88.      Defendants sold the securities described herein in violation of Section 5 of the Securities act and are therefore jointly and severally liable under Section 12 of the Securities Act.

89.      Defendants also offered and sold securities using interstate commerce or the mails by the means of oral communication, which included untrue statements of material facts or omitted to state a material fact necessary in order to make the statements in light of the circumstances under which they were made not misleading, and are therefore liable

THIRD AMENDED COMPLAINT

under Section 12 of the Securities Act.

## THIRD CAUSE OF ACTION

**(Violation of Section 15 of the Securities and Exchange Act Against WOODS, and WU, and Does 3 through 8, Inclusive)**

90. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 89 and reallege those allegations as if fully set forth herein.

91. WOODS and WU are control persons within the meaning of Section 15 of the Securities Act and are therefore jointly and severally liable for the violations by UC SEATTLE and UC BATTERY PARK of Sections 5 and 12 of the Securities Act.

## FOURTH CAUSE OF ACTION

**(Violation of Section 17 of the Securities and Exchange Act Against All Defendants, and Does 3 through 8, Inclusive)**

92. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 91 and reallege those allegations as if fully set forth herein.

93. In the offer and sale of securities to Plaintiffs, Defendants employed devices, schemes, and artifices to defraud Plaintiffs as described herein.

94. In the offer and sale of securities to Plaintiffs, as described in detail herein, Defendants made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading.

95. In the offer and sale of securities to Plaintiffs, as described in detail herein, Defendants engaged in transactions, practice or a course of business which operated as a fraud and deceit on Plaintiffs.

96. Defendants are therefore liable under Section 17 of the Securities Act.

## FIFTH CAUSE OF ACTION

**(Violation of Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5 Against All Defendants and Does 3 through 8, Inclusive)**

97. Plaintiffs hereby incorporate each and every allegation contained in

paragraphs 1 through 96 and reallege those allegations as if fully set forth herein.

98.     Defendants and each of them, by engaging in the conduct described herein knowingly, recklessly, or negligently, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce or of the mails, with scienter, violated Section 10(b) and Rule 10b-5 by: (i) employing devices, schemes, and artifacts to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices and a course of business pursuant to which they knowingly or recklessly engaged in acts that operated as a fraud or deceit upon Plaintiffs in connection with its offer and sale of securities to Plaintiffs.

99.     Plaintiffs were induced to purchase Defendants' securities as a direct and proximate result of Defendants' fraud, deceit, misleading statements, concealments of material facts and other conduct which constitute(s), separately and together, violations of the Exchange Act as alleged.

100.    Plaintiffs reasonably and justifiably relied upon the representations, promises and other statements, communications and conduct by Defendants in investing in UC SEATTLE and UC BATTERY PARK.

101.    Plaintiffs were ignorant of, and Defendants concealed from Plaintiffs, and did not disclose to Plaintiffs, material facts which were necessary to prevent the fraud, deceit and other violations of the Exchange Act by Defendants. Defendants prevented Plaintiffs from discovering the true facts as to Defendants' illegal and wrongful actions and the damages caused Plaintiffs.

102.    By engaging in the conduct described in this Complaint, Defendants, and each of them, have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder, in each and all Securities Transactions, including offers and sales of UC SEATTLE and UC BATTERY PARK

securities, with and to Plaintiffs as alleged.

103.    Plaintiffs have sustained damages in sums to be determined according to proof, but exceeding the jurisdictional threshold of this Court.

104.    Plaintiffs are entitled to recover their economic and other compensatory damages from Defendants, and each of them, according to proof, together with pre- and post- judgment interest, attorneys' fees, experts' fees and costs.

105.    Plaintiffs' damages include, without limitation, the principal sum of $750,000.00 which Plaintiffs paid collectively to purchase UC SEATTLE and UC BATTERY PARK securities and other compensatory and consequential damages.

106.    Defendants, and each of them, have acted with oppression, fraud and malice in the matters herein alleged, for which Plaintiffs are entitled to recover punitive and exemplary damages from each and all Defendants.

## SIXTH CAUSE OF ACTION

**(Violation of California Corporations Code §§ 25401 and 25501 Against All Defendants and Does 3 through 8, Inclusive)**

107.    Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 106 and reallege those allegations as if fully set forth herein.

108.    It is unlawful for any person to offer or sell a security in the State of California by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading. Cal. Corp. Code § 25401.

109.    Any person who violates California Corporations Code § 25401 is liable to the person who purchased a security from him, who may sue either for rescission or for damages (if the plaintiff or the defendant, as the case may be, no longer owns the security), unless the defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission. Upon

- 25 -

1    rescission, a purchaser may recover the consideration paid for the security, plus interest at

2    the legal rate, less the amount of any income received on the security, upon tender of the

3    security. Cal. Corp. Code § 25501.

4         110.    As set forth in this Complaint, Defendants offered to sell membership interests

5    to Plaintiffs in UC SEATTLE and UC BATTERY PARK in the State of California by means

6    of written and oral communications that included untrue statements of material facts and

7    omitted to state material facts necessary to make the statements made, in light of the

8    circumstances under which they statements were made, not misleading.

9         111.    Defendants offered to sell those membership interests in UC SEATTLE and

10   UC BATTERY PARK to the Plaintiffs.

11        112.    The membership interest in UC SEATTLE and UC BATTERY PARK

12   offered to be sold by Defendants constituted unregistered securities.

13        113.    Plaintiffs both purchased securities from Defendants in UC SEATTLE and DR.

14   CHRISTENSEN purchased securities from Defendants in UC BATTERY PARK.

15        114.    Plaintiffs herein sue UC SEATTLE and UC BATTERY PARK for rescission

16   of the purchase by Plaintiffs and sale by Defendants of the membership interests in UC

17   SEATTLE and UC BATTERY PARTY purchased by the Plaintiffs and sold by Defendants,

18   and to recover the consideration paid by Plaintiffs for those securities, plus interest at the

19   legal rate, less the amount of any income received on those securities.

20                        **SEVENTH CAUSE OF ACTION**

21   **(For Violations of California Corporations Code §§ 25400 & 25500 (Against All**

22                  **Defendants and Does 3 through 8, Inclusive)**

23        115.    Plaintiffs hereby incorporate each and every allegation contained in

24   paragraphs 1 through 114 and reallege those allegations as if fully set forth herein.

25        116.    In the misrepresentations and other wrongful and illegal conduct by

26   Defendants herein alleged, including in the solicitations, offers and sales of securities to

27   Plaintiffs, Defendants each and all violated Corporations Code Section 25400.

28        117.    Defendants, and each of them, misrepresented the values and risks of

                                    - 26 -

investing in the proffered securities and made other false and misleading statements and engaged in other conduct which violate, individually and in aggregate, Corporations Code Section 25400.

118.  As provided in Corporations Code Section 25500, and as a result of Defendants' violations of Corporations Code Section 25400, Plaintiffs are entitled to damages and other relief.

119.  Plaintiffs pray for damages pursuant to Corporations Code Section 25500, including the sum of $750,000 paid by Plaintiffs for securities in UC SEATTLE and UC BATTERY PARK, together with interest accruing at the legal rate, including other compensatory and consequential damages, and punitive and exemplary damages.

120.  Plaintiffs also pray for recovery of such other damages as may be proven and recoverable, including under Corporations Code Section 25500 and other applicable California Securities Laws.

121.  Alternatively, or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $750,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof, including attorneys' fees and costs, and other compensatory and consequential damages and punitive and exemplary damages.

## **EIGHTH CAUSE OF ACTION**

### **(For Violations of California Corporations Code § 25403 Against WOODS and WU)**

122.  Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 121 and reallege those allegations as if fully set forth herein.

123.  Defendants WOODS and WU are jointly and severally liable for UC SEATTLE and UC BATTERY PARK's violations of the California Corporations Code as they are either control persons of UC SEATTLE and UC BATTERY PARK and knowingly induced the violations described in the Complaint, or they provided substantial assistance in the violations of the California Corporations Code as described in this Complaint.

## NINTH CAUSE OF ACTION

**(For Violations of California Corporations Code §§ 25503, 25504.1 & 25110 Against All Defendants and Does 3 through 8, Inclusive)**

124.    Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 123 and reallege those allegations as if fully set forth herein.

125.    Defendants have solicited, offered and sold securities in UC SEATTLE and UC BATTERY PARK without qualifying said securities for sale in California, including as issuer transactions, as required by Corporations Code Section 25110, et seq., including in the offer and sale of securities to Plaintiffs.

126.    Defendants' offers and sales of securities in UC SEATTLE and UC BATTERY PARK were not exempt from qualification under Corporations Code Section 25110, or other provisions of the California Securities Laws.

127.    By the foregoing, each and all Defendants have violated Corporations Code Section 25110, thereby entitling Plaintiffs to recover damages and other relief, including under Corporations Code Sections 25503 and 25504.1.

128.    Plaintiffs pray for damages pursuant to Corporations Code Sections 25503 and 25504.1, including the sum of $750,000 paid by Plaintiffs for securities in UC SEATTLE and UC BATTERY PARK, together with interest accruing at the legal rate.

129.    Plaintiffs also pray for recovery of such other damages as may be proven and recoverable under Corporations Code Sections 25503 and 25504.1, including attorneys' fees and costs, as well as other compensatory and consequential damages and punitive and exemplary damages.

130.    Alternatively or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $750,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof.

## TENTH CAUSE OF ACTION

**(Violation of California Corporations Code §25504 Against All Defendants and Does 3 through 8, Inclusive)**

131.    Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 130 and reallege those allegations as if fully set forth herein.

132.    Every person who directly or indirectly controls a person liable under California Corporations Code § 25501, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist. Cal. Corp. Code § 25504.

133.    Additionally, any person who materially assists in any violation of California Corporations Code § 25501, with intent to deceive or defraud, is jointly and severally liable with any other person liable for such violation. Cal. Corp. Code. § 25504.1.

134.    WOODS directly and indirectly controls UC SEATTLE and UC BATTERY PARK. WOODS is a principal executive officer and director of UC SEATTLE and UC BATTERY PARK, or occupies a similar status and performs similar functions as a principal executive officer or director of, and a partner in, UC SEATTLE and UC BATTERY PARK. WOODS is also an employee and agent of UC SEATTLE and UC BATTERY who materially aided and assisted in the acts and transactions constituting the violation by UC SEATTLE and UC BATTERY PARK of California Corporations Code § 25401, and did so with the intent to deceive and defraud, incurring liability of UC SEATTLE and UC BATTERY PARK to Plaintiffs under California Corporations Code § 25501, as set forth in this Complaint. WOODS had knowledge of and reasonable grounds to believe in the existence of the facts by which the liability of UC SEATTLE and UC BATTERY PARK, under California Corporations Code §§ 25401 and 25501, is alleged to exist. WOODS is jointly and severally

1    liable therefor, with and to the same extent as UC SEATTLE and UC BATTERY PARK.

2          135.    WU directly and indirectly controls UC SEATTLE and UC BATTERY PARK.

3    WU is a principal executive officer and director of UC SEATTLE and UC BATTERY

4    PARK, or occupies a similar status and performs similar functions as a principal executive

5    officer or director of, and a partner in, UC SEATTLE and UC BATTERY PARK. WU also

6    is an employee and agent of UC SEATTLE and UC BATTERY PARK who materially aided

7    and assisted in the acts and transactions constituting the violation by UC SEATTLE and UC

8    BATTERY PARK of California Corporations Code § 25401, and did so with the intent to

9    deceive and defraud, incurring liability of UC SEATTLE and UC BATTERY PARK to

10   Plaintiffs under California Corporations Code § 25501, as set forth in this Complaint. WU

11   had knowledge of and reasonable grounds to believe in the existence of the facts by which

12   the liability of UC SEATTLE and UC BATTERY PARK, under California Corporations

13   Code §§ 25401 and 25501, is alleged to exist. WU is jointly and severally liable therefor, with

14   and to the same extent as UC SEATTLE and UC BATTERY PARK.

15          136.    URBAN COMMONS directly and indirectly controls UC SEATTLE and UC

16   BATTERY PARK. URBAN COMMONS occupies a similar status and performs similar

17   functions as a principal executive officer or director of, and a partner in, UC SEATTLE and

18   UC BATTERY PARK. URBAN COMMONS also is an agent of UC SEATTLE and UC

19   BATTERY PARK who materially aided and assisted in the acts and transactions constituting

20   the violation by UC SEATTLE and UC BATTERY PARK of California Corporations Code

21   § 25401, and did so with the intent to deceive and defraud, incurring liability of UC

22   SEATTLE and UC BATTERY PARK to Plaintiffs under California Corporations Code §

23   25501, as set forth in this Complaint. URBAN COMMONS had knowledge of and reasonable

24   grounds to believe in the existence of the facts by which the liability of UC SEATTLE and

25   UC BATTERY PARK, under California Corporations Code §§ 25401 and 25501, is alleged

26   to exist. URBAN COMMONS is jointly and severally liable therefor, with and to the same

27   extent as UC SEATTLE and UC BATTERY PARK.

28          137.    EGNATZ directly and indirectly controls UC SEATTLE and UC BATTERY

PARK. EGNATZ occupies a similar status and performs similar functions as a partner in UC

SEATTLE and UC BATTERY PARK. EGNATZ also is an agent of UC SEATTLE and UC

BATTERY PARK who materially aided and assisted in the acts and transactions constituting

the violation by UC SEATTLE and UC BATTERY PARK of California Corporations Code

§ 25401, and did so with the intent to deceive and defraud, incurring liability of UC

SEATTLE and UC BATTERY PARK to Plaintiffs under California Corporations Code §

25501, as set forth in this Complaint. EGNATZ had knowledge of and reasonable grounds to

believe in the existence of the facts by which the liability of UC SEATTLE and UC

BATTERY PARK, under California Corporations Code§§ 25401 and 25501, is alleged to

exist. EGNATZ is jointly and severally liable thereto, with and to the same extent as UC

SEATTLE and UC BATTERY PARK.

138. BIRT, along with EGNATZ, admits to being an "exclusive

agent for the placement of securities on behalf of URBAN COMMONS, UC BATTERY

PARK, and UC SEATTLE. As such, BIRT acted as an agent with direct and indirect control

of UC SEATTLE and UC BATTERY PARK. On information and belief, and on that basis,

Plaintiffs allege that BIRT occupies a similar status and performs similar functions as a

partner in UC SEATTLE and UC BATTERY PARK. BIRT also is an agent of UC

SEATTLE and UC BATTERY PARK who materially aided and assisted in the acts and

transactions constituting the violation by UC SEATTLE and UC BATTERY PARK of

California Corporations Code § 25401, and did so with the intent to deceive and defraud,

incurring liability of UC SEATTLE and UC BATTERY PARK to Plaintiffs under California

Corporations Code § 25501, as set forth in this Complaint. BIRT had knowledge of and

reasonable grounds to believe in the existence of the facts by which the liability of UC

SEATTLE and UC BATTERY PARK, under California Corporations Code§§ 25401 and

25501, is alleged to exist. BIRT is jointly and severally liable thereto, with and to the same

extent as UC SEATTLE and UC BATTERY PARK.

139. Each of WOODS, WU, URBAN COMMONS, EGNATZ, and BIRT

transmitted, caused to be transmitted, delivered, caused to be delivered, or caused to be

1    disseminated to Plaintiffs materially untrue statements and omissions of material fact as

2    alleged in this Complaint.

3          140.    As a direct and proximate result thereof, Plaintiffs have suffered damages and

4    are entitled to rescission of their purchase of membership interest in UC SEATTLE and UC

5    BATTERY PARK. Each of WOODS, WU, URBAN COMMONS, EGNATZ, and BIRT are

6    jointly and severally liable with UC SEATTLE and UC BATTERY PARK therefor, with and

7    to the same extent as UC SEATTLE and UC BATTERY PARK.

8                               **ELEVENTH CAUSE OF ACTION**

9    **(Violation of California Corporations Code §§ 25401 & 25504.1 Against All**

10                 **Defendants and Does 3 through 8, Inclusive)**

11          141.    Plaintiffs hereby incorporate each and every allegation contained in

12    paragraphs 1 through 140 and reallege those allegations as if fully set forth herein.

13          142.    Defendants, through their Conspiracy and otherwise, materially participated

14    and joined in the offers and sales of securities in California, including to Plaintiffs, by means

15    of false, fraudulent and misleading oral and written representations including documents

16    intended to induce and solicit Plaintiffs' purchase of securities in UC SEATTLE and UC

17    BATTERY PARK.

18          143.    Defendants intended to mislead, deceive and defraud Plaintiffs in said offers

19    and sales of securities in UC SEATTLE and UC BATTERY PARK, including through

20    Defendants' representations, Conspiracy and other conduct as described herein.

21          144.    Defendants each had full knowledge of the false, misleading, fraudulent and

22    deceitful representations being made to Plaintiffs, including through the communications

23    from Defendants to Plaintiffs as alleged.

24          145.    Defendants each disseminated the solicitation and offering documents and

25    information to Plaintiffs with the intent of misleading, deceiving and defrauding Plaintiffs

26    and to induce Plaintiffs to purchase securities in UC SEATTLE and UC BATTERY PARK.

27          146.    Each Defendant knowingly intended that Plaintiffs would rely on the promises

28    and other representations being made by Defendants to Plaintiffs to induce Plaintiffs'

purchase of securities in UC SEATTLE and UC BATTERY PARK.

147.   Each Defendant intended that Plaintiffs would pay, and in justifiable reliance on Defendants' misleading, false and fraudulent statements and concealments of material information, Plaintiffs did pay to Defendants for securities in UC SEATTLE and UC BATTERY PARK the total sum of $750,000.

148.   By the foregoing, each and all Defendants have violated Corporations Code Section 25401, including derivatively, thereby entitling Plaintiffs to recover damages and other relief under Corporations Code Section 25504.1, as well as punitive and exemplary damages.

149.   Plaintiffs pray for damages pursuant to Corporations Code Section 25504, including the sum of $750,000 paid by Plaintiffs in the purchase of securities in UC SEATTLE and UC BATTERY PARK, together with interest accruing at the legal rate.

150.   Plaintiffs also pray for recovery of such other damages as may be proven and recoverable, including under Corporations Code Sections 25401 and 25504.1, including other compensatory and consequential damages.

151.   Alternatively or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $750,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof, including other compensatory and consequential damages and punitive and exemplary damages.

## **TWELFTH CAUSE OF ACTION**

**(Violation of California Corporations Code §§ 25200, et seq. & 25501.5 Against All Defendants and Does 3 through 8, Inclusive)**

152.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 151 and reallege those allegations as if fully set forth herein.

153.   At the times of the solicitations, offers and sales of the securities in UC SEATTLE and UC BATTERY PARK to Plaintiffs, none of the Defendants were licensed as

1 securities broker dealer(s) as required by Part 3 of the Corporations Code, Section 25200, et

2 seq.

3      154.    Plaintiffs hereby rescind and tender back to UC SEATTLE and UC BATTERY

4 PARK and to the other Defendants, the securities sold to and purchased by Plaintiffs, as

5 provided in Corporations Code Section 25501.5.

6      155.    Defendants further are liable to restore and return to Plaintiffs, and Plaintiffs

7 hereby seek and apply for restitution of all consideration paid by Plaintiffs for the securities

8 purchased in UC SEATTLE and UC BATTERY PARK, in the sum of $750,000, together

9 with interest at the legal rate.

10      156.    Plaintiffs further seek recovery of additional damages according to proof,

11 including under Corporations Code Section 25501.5, and other compensatory and

12 consequential damages.

13      157.    Plaintiffs further are entitled to recoveries and other relief pursuant to

14 California Code of Civil Procedure Section 1029.8 due to the injury, loss and damages caused

15 to Plaintiffs by Defendants, who are unlicensed persons who solicited, purported to provide

16 advice to Plaintiffs and who conducted and directed the offer and sales of securities to

17 Plaintiffs.

18      158.    By virtue of Defendants' failure to be licensed in the foregoing transactions and

19 activities as legally required, Plaintiffs, accordingly, are entitled to recover from Defendants,

20 under Code of Civil Procedure Section 1029.8(a), without limitation of Plaintiffs' other

21 remedies, additional damages for "treble the amount of damages assessed in a civil action in

22 any court having proper jurisdiction." The additional damages shall not exceed $10,000.00

23 under Section 1029.8(c).

24      159.    Plaintiffs further pray, under Code of Civil Procedure Section 1029.8(a), for

25 recovery of Plaintiffs' costs and attorneys' fees in this action and if Plaintiffs prevail herein.

26 Plaintiffs respectfully contend that such award would be a proper exercise of this Court's

27 discretion pursuant to the foregoing statute.

28                    **THIRTEENTH CAUSE OF ACTION**

**(Theft By False Pretense – California Penal Code §496(c), Against All Defendants and Does 3 through 8, Inclusive)**

160.    Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 159 and reallege those allegations as if fully set forth herein.

161.    Defendants obtained $750,000 from Plaintiffs under false pretenses.  More specifically, as part of their offering and sale of securities in UC SEATTLE and UC BATTERY PARK, Defendants represented to Plaintiffs that: (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) UC SEATTLE and UC BATTERY PARK would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Seattle Hilton and the Wagner Hotel; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for UC BATTERY PARK would be completed by March 6, 2020; (vii) UC SEATTLE and UC BATTERY PARK would obtain loans in an approximate aggregate amount of $60 million and $100 million to acquire the Seattle Hilton and Wagner Hotel respectively; and (viii) the Seattle Hilton would be sold to EAGLEHT by early summer 2020 and UC BATTERY PARK would be sold to EAGLEHT by fourth quarter of 2020.

162.    At the time Defendants made these representations, Defendants were well aware that EAGLEHT was not performing well, Defendants knew that EH-REIT had defaulted on a $341 million facility loan, and that the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019. Defendants further knew that they were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Exchange for suspected

- 35 -

breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT and that trading of EHT's units had been suspended.

163. Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment in an act of theft.

164. Under these false pretenses, which were unbeknownst to Plaintiffs at the time, Plaintiffs both invested in UC SEATTLE and Plaintiff CHRISTENSEN invested in UC BATTERY.

165. The theft amounted to $750,000.00. Under Penal Code Section 496(c), Plaintiffs are entitled to three times the amount of actual damages, costs of suit, and its reasonable attorneys' fees.

## FOURTEENTH CAUSE OF ACTION

### (Constructive Fraud Against All Defendants and Does 3 through 8, Inclusive)

166. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 165 and reallege those allegations as if fully set forth herein.

167. A relation of trust and confidence existed between Defendants on the one hand and Plaintiffs on the other hand.

168. Defendants engaged in various acts, omissions, and concealment involving breaches of the above duties and trust and confidence placed in Defendants by Plaintiffs, including that they failed to disclose to Plaintiffs that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

169. Specifically, Defendants represented to Plaintiffs that (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) UC SEATTLE and UC BATTERY PARK would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Seattle Hilton and the Wagner Hotel; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for UC BATTERY PARK would be completed by March 6, 2020; (vii) UC SEATTLE and UC BATTERY PARK would obtain loans in an approximate aggregate amount of $60 million and $100 million to acquire the Seattle Hilton and Wagner Hotel respectively; and (viii) the Seattle Hilton would be sold to EAGLEHT by early summer 2020 and UC BATTERY PARK would be sold to EAGLEHT by fourth quarter of 2020. Each of these representations were false, was known by their makers to be false at the time made, and induced the Plaintiffs' justifiable reliance on Defendants when both made an investment in UC SEATTLE and DR. CHRISTENSEN invested in UC BATTERY PARK.

170. Plaintiffs did not know of Defendants' acts, omissions, and concealment.

171. Plaintiffs reasonably and actually relied upon the acts, omissions and concealment by Defendants.

172. Plaintiffs were harmed by Defendants' acts, omissions, and concealment in that had the important facts been disclosed to Plaintiffs, Plaintiffs would have taken steps, including not investing in UC SEATTLE and/or UC BATTERY PARK.

173. Defendants' breach of their duties and of the confidence and trust placed in them by Plaintiffs was a substantial factor in causing Plaintiffs' harm.

174. In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

THIRD AMENDED COMPLAINT

1   Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material

2   facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving

3   Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice

4   (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified,

5   or performed the acts, justifying an award of exemplary and punitive damages, pursuant to

6   Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar

7   future misconduct and to make an example of them to the community.

8   **FIFTEENTH CAUSE OF ACTION**

9   **(Fraud-False Promise Against All Defendants and Does 3 through 8, Inclusive)**

10  175.   Plaintiffs hereby incorporate each and every allegation contained in

11  paragraphs 1 through 174 and reallege those allegations as if fully set forth herein.

12  176.   In or about January 2020 and February 2020, Defendants engaged in private

13  offerings for UC SEATTLE and UC BATTERY PARK. The offering for UC Seattle was

14  for up to $40 million and the offering for UC BATTERY PARK was for up to $70 million.

15  As part of these offerings, Defendants promised that: (i) previous investments with URBAN

16  COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) UC

17  SEATTLE and UC BATTERY PARK would not use or apply the purchase price until the

18  necessary funds from the offerings had been raised; (iii) the funds raised for the respective

19  offerings would be used to invest in entities which would acquire, own, operate, and

20  eventually sell the Seattle Hilton and the Wagner Hotel; (iv) the purchase price for each

21  property would be deposited into interest-bearing secure bank accounts; (v) if the

22  Subscription Agreements were terminated, all funds raised would be returned to the

23  investors, together with any interest remaining on such funds following the payment of all

24  costs and expenses; (vi) the offering for UC BATTERY PARK would be completed by

25  March 6, 2020; (vii) UC SEATTLE and UC BATTERY PARK would obtain loans in an

26  approximate aggregate amount of $60 million and $100 million to acquire the Seattle Hilton

27  and Wagner Hotel respectively; and (viii) the Seattle Hilton would be sold to EAGLEHT

28  by early summer 2020 and UC BATTERY PARK would be sold to EAGLEHT by fourth

quarter of 2020. These promises were important to the establishment of the business relationship between Plaintiffs and Defendants.

177. Defendants did not intend to perform their promises when such promises were made.

178. Defendants intended for Plaintiffs to rely on their promises to obtain funding from Plaintiffs.

179. Plaintiffs reasonably relied on Defendants' promises and proceeded to both invest in UC SEATTLE and DR. CHRISTENSEN also invested in UC BATTERY PARK. Defendants did not perform the promised acts. Defendants never honored their obligations under the Subscription Agreements. As a result, Defendants failed to: (i) complete the offering for UC SEATTLE; (ii) complete the offering for UC BATTERY PARK; (iii) obtain financing commitments for the acquisition loans in an approximate aggregate of $60 million and $100 million in order to acquire and refurbish the Seattle Hilton and the Wagner Hotel respectively; (iv) purchase and refurbish either the Seattle Hilton or the Wagner Hotel; and (iv) return to Plaintiffs their initial investments totaling $750,000.

180. Plaintiffs were harmed by Defendants' failure to perform their promises. Plaintiffs both invested in UC SEATTLE and DR. CHRISTENSEN invested in UC BATTERY PARK, and received nothing in return, leaving Plaintiffs out of pocket $750,000. Additionally, Plaintiffs have incurred and will incur additional expenses, including attorneys' fees and costs. Plaintiffs seek rescission of the UC Seattle Offering and UC Battery Park Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

181. Plaintiffs' reliance on Defendants' promises was a substantial factor in causing Plaintiffs' harm.

182. In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving

1    Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice

2    (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified,

3    or performed the acts, justifying an award of exemplary and punitive damages, pursuant to

4    Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar

5    future misconduct and to make an example of them to the community.

6

7

8                   **SIXTEENTH CAUSE OF ACTION**

9    **(Fraud-False Promise Against All Defendants and Does 3 through 8, Inclusive)**

10    183.    Plaintiffs hereby incorporate each and every allegation contained in

11    paragraphs 1 through 182 and reallege those allegations as if fully set forth herein.

12    184.    Defendants, to induce Plaintiffs to invest in UC SEATTLE and UC

13    BATTERY PARK, failed to disclose important facts, including that: (i) EAGLEHT was not

14    performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default

15    on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's

16    properties, to place with EHT the full sum of security deposits due under the master lease

17    agreements and timely pay rent since December 2019; (iv) Defendants were under

18    investigation by the Monetary Authority of Singapore ("MAS") and the Singapore

19    Exchange for suspected breaches of disclosure requirements under Section 203 of the

20    Singapore Securities and Futures Act, and breaches of regulations and listing rules in

21    relation to EH-REIT; and (v) trading of EHT's units had been suspended.

22    185.    Plaintiffs did not know of the concealed facts.

23    186.    Defendants intended to deceive Plaintiffs and cause Plaintiffs to invest in UC

24    SEATTLE and UC BATTERY PARK by concealing such facts.

25    187.    Plaintiffs reasonably and actually relied on Defendants' deceptions.

26    188.    Plaintiffs were harmed by Defendants' concealment in that had the important

27    facts been disclosed, Plaintiffs would never have invested in UC SEATTLE and/or UC

28    BATTERY PARK pursuant to the UC Seattle Offering and UC Battery Park Offering.

Defendants' concealment of important facts has caused injury and damage to Plaintiffs of at least $750,000. Such damages include DR. ROSEN's $250,000 investment in UC SEATTLE, and DR. CHRISTENSEN'S $250,000 investments in each of UC SEATTLE and UC BATTERY PARK. Plaintiffs seek rescission of the UC Seattle Offering and UC Battery Park Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

189.     Defendants' concealment was a substantial factor in causing Plaintiffs' harm.

190.     In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an

example of them to the community.

## SEVENTEENTH CAUSE OF ACTION

### (Intentional Misrepresentation Against All Defendants and Does 3 through 8, Inclusive)

191.     Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 190 and reallege those allegations as if fully set forth herein.

192.     Defendants misrepresented an essential material fact.  As part of their offer and sale of securities in UC SEATTLE and UC BATTERY PARK to Plaintiffs, Defendants promised that: (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) UC SEATTLE and UC BATTERY PARK would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used

- 41 -

to invest in entities which would acquire, own, operate, and eventually sell the Seattle Hilton and the Wagner Hotel; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for UC BATTERY PARK would be completed by March 6, 2020; (vii) UC SEATTLE and UC BATTERY PARK would obtain loans in an approximate aggregate amount of $60 million and $100 million to acquire the Seattle Hilton and Wagner Hotel respectively; and (viii) the Seattle Hilton would be sold to EAGLEHT by early summer 2020 and UC BATTERY PARK would be sold to EAGLEHT by fourth quarter of 2020.

193.    At the time Defendants made this representation, Defendants knew that such representations were false, as Defendants were well aware that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

194.    Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment.

195.    Plaintiffs reasonably relied on Defendants' representations, having no reason to believe that they would not receive back their initial investments, and as such, proceeded to invest in the UC Seattle Offering and UC Battery Park Offering.

196.    Plaintiffs were harmed by Defendants' misrepresentations.  Plaintiffs both invested in UC SEATTLE and DR. CHRISTENSEN also invested in UC BATTERY PARK, and Plaintiffs received nothing in return, causing injury and damage to Plaintiffs of

at least $750,000. Such damages include DR. ROSEN's $250,000 investment in UC

SEATTLE, and DR. CHRISTENSEN'S $250,000 investments in each of UC SEATLTE

and UC BATTERY PARK. Plaintiffs seek rescission of the UC Seattle Offering and UC

Battery Park Offering and are entitled to "complete relief" including "restitution of

benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

197.    Plaintiffs' reliance on Defendants' misrepresentations was a substantial factor

in causing Plaintiffs' harm.

198.    In committing the acts herein, Defendants are guilty of oppression (despicable

conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material

facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving

Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice

(conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified,

or performed the acts, justifying an award of exemplary and punitive damages, pursuant to

Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar

future misconduct and to make an

example of them to the community.

## EIGHTEENTH CAUSE OF ACTION

### (Negligent Misrepresentation Against All Defendants and Does 3 through 8, Inclusive)

199.    Plaintiffs hereby incorporate each and every allegation contained in

paragraphs 1 through 198 and reallege those allegations as if fully set forth herein.

200.    Defendants misrepresented an essential material fact.  As part of their offer

and sale of securities in UC SEATTLE and UC BATTERY PARK to Plaintiffs, Defendants

promised that (i) previous investments with URBAN COMMONS had earned a cash on

cash return of 30% in three and one-half months; (ii) UC SEATTLE and UC BATTERY

PARK would not use or apply the purchase price until the necessary funds from the

offerings had been raised; (iii) the funds raised for the respective offerings would be used

to invest in entities which would acquire, own, operate, and eventually sell the Seattle Hilton and the Wagner Hotel; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for UC BATTERY PARK would be completed by March 6, 2020; (vii) UC SEATTLE and UC BATTERY PARK would obtain loans in an approximate aggregate amount of $60 million and $100 million to acquire the Seattle Hilton and Wagner Hotel respectively; and (viii) the Seattle Hilton would be sold to EAGLEHT by early summer 2020 and UC BATTERY PARK would be sold to EAGLEHT by fourth quarter of 2020.

201.    At the time Defendants made this representation, Defendants knew that such representations were false, as Defendants were well aware that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

202.    Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment.

203.    Plaintiffs reasonably relied on Defendants' representations, having no reason to believe that they would not receive back their initial investments, and as such, proceeded to provide invest in the UC Seattle Offering and UC Battery Park Offering.

204.    Plaintiffs were harmed by Defendants' misrepresentations.  Plaintiffs both invested in UC SEATTLE and DR. CHRISTENSEN also invested in UC BATTERY PARK, and Plaintiffs received nothing in return, causing injury and damage to Plaintiffs of

at least $750,000. Such damages include DR. ROSEN's $250,000 investment in UC SEATTLE, and DR. CHRISTENSEN'S $250,000 investments in each of UC SEATLTE and UC BATTERY PARK. Plaintiffs seek rescission of the UC Seattle Offering and UC Battery Park Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

205.    Plaintiffs' reliance on Defendants' misrepresentation was a substantial factor in causing Plaintiffs' harm.

206.    In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an example of them to the community.

## NINETEENTH CAUSE OF ACTION

### (Negligence Against All Defendants and Does 3 through 8, Inclusive)

207.    Plaintiff hereby re-alleges and incorporates each and every allegation contained in paragraphs 1 through 206 and re-alleges those allegations as if fully set forth herein.

208.    Based on their relationship with Plaintiffs, Defendants owed a duty of care to Plaintiffs.

209.    Each of the Defendants engaged in gross negligence in that their conduct—and lack thereof—failed to exercise the barest minimum of care and departed from the ordinary standard of care under the circumstances in their dealings with Plaintiffs, to Plaintiffs' detriment.

210.    Each of the Defendants also engaged in negligence in that they failed to exercise reasonable care under the circumstances in their dealings with Plaintiffs, to

1     Plaintiffs' detriment.

2       211.    As a proximate result of such negligence on the part of Defendants, Plaintiffs

3 have suffered damages in an amount to be established at trial, but which are in excess of

4 $750,000.00.

5 **TWENTIETH CAUSE OF ACTION**

6 **(Violation of California Corporations Code §17704.41 Against All Defendants And**

7 **Does 3 through 8 Inclusive)**

8       212.    Plaintiffs hereby incorporate each and every allegation contained in

9 paragraphs 1 through 211 and reallege those allegations as if fully set forth herein.

10       213.    The members of UC SEATTLE and UC BATTERY PARK residing in

11 California represent twenty–five percent (25%) or more of the voting interests of the members

12 of UC SEATTLE and UC BATTERY PARK.

13       214.    UC SEATTLE and UC BATTERY PARK are manager–managed limited

14 liability companies.

15       215.    Plaintiffs are entitled to all information and inspection rights with respect to

16 UC SEATTLE and UC BATTERY PARK as provided in California Corporations Code §

17 17704.10.

18       216.    Proper demand was made by the Information Request upon URBAN

19 COMMONS, UC SEATTLE, and UC BATTERY PARK for information and inspection

20 pursuant to California Corporations Code §17704.10.

21       217.    Defendants provided documents and information in response to Plaintiffs'

22 Information Request, however, the documents and information provided by Defendants were

23 woefully deficient and not a single page was produced evidencing that:

24              (i)     Plaintiffs were members of either UC SEATTLE or UC BATTERY

25                     PARK;

26              (ii)     the 2020 offerings of membership in which Plaintiffs participated

27                     occurred;

28              (iii)    Plaintiffs' funds were deposited into interest-bearing secure bank

accounts;

(iv)     Plaintiffs' initial membership interests were reflected in the UC SEATTLE Operating Agreement and UC BATTERY PARK Operating Agreement respectively;

(v)      UC SEATTLE completed its offering and raised the necessary funds of $40 million from its offering of membership interests;

(vi)     UC Seattle obtained a financing commitment for the acquisition loan in an approximate aggregate amount of $60 million in order to acquire and refurbish the Hilton Seattle; and

(vii)     UC BATTERY PARK completed its offering and raised the necessary funds of $70 million from its offering of membership interests.

218.     Plaintiffs seek an order of the Court requiring Defendants to provide all information and permit the inspection in its entirety as requested by the Information Request, pursuant to California Corporations Code § 17704.10.

<u>**TWENTY-FIRST CAUSE OF ACTION**</u>

**(Violation of California Business & Professions Code Section 17200, et seq. Against All Defendants and Does 3 through 8 Inclusive)**

219.     Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 218 and reallege those allegations as if fully set forth herein.

220.     Defendants have committed unlawful, unfair and fraudulent business activities and practices in their offering and selling of securities to Plaintiffs.

221.     By such conduct, Defendants, and each of them, have violated California Business & Professions Code Section 17200, et seq. Defendants' violations have continued throughout their business in California and to present date, including when Defendants misled and defrauded Plaintiffs into purchasing securities in UC SEATTLE and UC BATTERY PARK.

222.     As a direct and proximate result of Defendants' unfair, unlawful and fraudulent business practices in violation of Business & Professions Code Section 17200, as alleged,

- 47 -

Plaintiffs are entitled to, and hereby seek, (a) rescission of Plaintiffs' purchases of securities in UC SEATTLE and UC BATTERY PARK, as alleged, and (b) restitution to Plaintiffs of all monies which Plaintiffs have paid for purchase of securities in UC SEATTLE and UC BATTERY PARK, i.e., the sum of $750,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Clifford A. Rosen, MD and Ronald Christensen, MD. pray for judgment against Defendants URBAN COMMONS, LLC, URBAN COMMONS 6TH AVE SEATTLE, URBAN COMMONS BATTERY PARK, LLC, TAYLOR WOODS, HOWARD WU, C. BRIAN EGNATZ, JASON BIRT, and DOES 3 through 8 and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION:**

1. For an award of general damages in an amount to be proven at trial;
2. To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;
3. For an award of punitive or exemplary damages, according to proof at trial;
4. For pre-judgment interest.


**ON THE SECOND CAUSE OF ACTION:**

5. For an award of general damages in an amount to be proven at trial;
6. To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;
7. For an award of punitive or exemplary damages, according to proof at trial;
8. For pre-judgment interest.


**ON THE THIRD CAUSE OF ACTION:**

9. For an award of general damages in an amount to be proven at trial;
10. To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

THIRD AMENDED COMPLAINT

11.    For an award of punitive or exemplary damages, according to proof at trial;

12.    For pre-judgment interest.

**ON THE FOURTH CAUSE OF ACTION:**

13.    For an award of general damages in an amount to be proven at trial;

14.    To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

15.    For an award of punitive or exemplary damages, according to proof at trial;

16.    For pre-judgment interest.

**ON THE FIFTH CAUSE OF ACTION:**

17.    For an award of general damages in an amount to be proven at trial;

18.    To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

19.    For an award of punitive or exemplary damages, according to proof at trial;

20.    For pre-judgment interest.

**ON THE SIXTH CAUSE OF ACTION:**

21.    For an award of general damages in an amount to be proven at trial;

22.    To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

23.    For an award of punitive or exemplary damages, according to proof at trial;

24.    For pre-judgment interest.

**ON THE SEVENTH CAUSE OF ACTION:**

25.    For an award of general damages in an amount to be proven at trial;

26.    To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

27.    For an award of punitive or exemplary damages, according to proof at trial;

28. For pre-judgment interest.

**ON THE EIGHTH CAUSE OF ACTION:**

29. For an award of general damages in an amount to be proven at trial;

30. To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

31. For an award of punitive or exemplary damages, according to proof at trial;

32. For pre-judgment interest.

**ON THE NINTH CAUSE OF ACTION**

33. For an award of general damages in an amount to be proven at trial;

34. For an award of punitive or exemplary damages, according to proof at trial;

35. For rescission of the purchase by Plaintiffs of the membership interest in UC Seattle and UC Battery Park purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

36. For pre-judgment interest.

**ON THE TENTH CAUSE OF ACTION**

37. For an award of general damages in an amount to be proven at trial;

38. For an award of punitive or exemplary damages, according to proof at trial;

39. For rescission of the purchase by Plaintiffs of the membership interest in UC Seattle and UC Battery Park purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

40. For pre-judgment interest.

**ON THE ELEVENTH CAUSE OF ACTION**

41.    For an award of general damages in an amount to be proven at trial;

42.    For an award of punitive or exemplary damages, according to proof at trial;

43.    For rescission of the purchase by Plaintiffs of the membership interest in UC Seattle and UC Battery Park purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

44.    For pre-judgment interest.


**ON THE TWELFTH CAUSE OF ACTION**

45.    For an award of general damages in an amount to be proven at trial;

46.    For an award of punitive or exemplary damages, according to proof at trial;

47.    For rescission of the purchase by Plaintiffs of the membership interest in UC Seattle and UC Battery Park purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

48.    For pre-judgment interest.


**ON THE THIRTEENTH CAUSE OF ACTION**

49.    For an award of general damages in an amount to be proven at trial;

50.    For an award equal to three times the amount of actual damages sustained by Plaintiffs;

51.    For reasonable attorneys' fees pursuant to Penal Code Section 496(c);

52.    For pre-judgment interest.


**ON THE FOURTEENTH CAUSE OF ACTION**

53.    For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

54.    For consequential damages, in an amount according to proof at trial,

- 51 -

55.  For an award of punitive or exemplary damages, according to proof at trial;

56.  For pre-judgment interest

**ON THE FIFTEENTH CAUSE OF ACTION**

57.  For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

58.  For consequential damages, in an amount according to proof at trial,

59.  For an award of punitive or exemplary damages, according to proof at trial;

60.  For pre-judgment interest.

**ON THE SIXTEENTH CAUSE OF ACTION**

61.  For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

62.  For consequential damages, in an amount according to proof at trial,

63.  For an award of punitive or exemplary damages, according to proof at trial;

64.  For pre-judgment interest.

**ON THE SEVENTEENTH CAUSE OF ACTION**

65.  For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

66.  For consequential damages, in an amount according to proof at trial,

67.  For an award of punitive or exemplary damages, according to proof at trial;

68.  For pre-judgment interest.

**ON THE EIGTEENTH CAUSE OF ACTION**

69.  For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

70.  For consequential damages, in an amount according to proof at trial,

71.  For an award of punitive or exemplary damages, according to proof at trial;

- 52 -

72.     For pre-judgment interest.


**ON THE NINETEENTH CAUSE OF ACTION**

73.     For restitution of benefits, including the return of Plaintiffs' $750,000 investment;

74.     For consequential damages, in an amount according to proof at trial,

75.     For an award of punitive or exemplary damages, according to proof at trial;

76.     For pre-judgment interest.


**ON THE TWENTIETH CAUSE OF ACTION**

77.     For an award of general damages in an amount to be proven at trial;

78.     For an award of punitive or exemplary damages, according to proof at trial;

79.     For pre-judgment interest.


**ON THE TWENTY-FIRST CAUSE OF ACTION**

80.     For restitutionary disgorgement;

81.     For permanent injunctive relief;

82.     For pre-judgment interest.


**FOR ALL CAUSES OF ACTION**

83.     For pre-judgment interest;

84.     For costs of suit incurred herein;

85.     For reasonable attorneys' fees, to the extent allowed by law;

86.     For suitable temporary restraining orders, writs of attachment, expedited discovery orders, turnover orders, and preliminary injunctions, as necessary to prevent Defendants from causing additional harm to Plaintiffs and to prevent the dissipation of assets and to ensure that a judgment can be satisfied; and

- 53 -

87.     For such other and further relief as the Court may deem just and proper.

DATED:  October 19, 2022

GARCIA RAINEY BLANK & BOWERBANK LLP

By _____ */s/ Norma V. Garcia*
NORMA V. GARCIA
JEFFREY M. BLANK
Attorneys for Plaintiffs
Clifford A. Rosen, MD
Ronald Christensen, MD

THIRD AMENDED COMPLAINT

## __DEMAND FOR JURY TRIAL__

Plaintiffs demand a trial by jury.


DATED:  October 19, 2022

GARCIA RAINEY BLANK & BOWERBANK LLP




By        _____ */s/ Norma V. Garcia*
              NORMA V. GARCIA
              JEFFREY M. BLANK
              Attorneys for Plaintiffs
              Clifford A. Rosen, MD
              Ronald Christensen, MD

THIRD AMENDED COMPLAINT